The Chief Justice
delivered the opinion of the court.*
On the 9th of November, 1799, Breckenridge paid for Brooks the sum of $4127 90; and to secure Breckenridge, Brooks conveyed to him by an absolute deed his Man’s-lick estate, but took from Breckenridge a bond for the reconveyance thereof, upon Brooks’ refunding to Breckenridge the aforesaid sum, and other moneys which Breckenridge might thereafter advance for Brooks. Not long afterwards Breckenridge, in virtue of a parol agreement with Brooks to that effect, took the estate into his possession and management, and for many years continued to receive the rents and profits; during which time he advanced, as occasion required, sundry considerable sums of money and property to Brooks and to others for his benefit. At length the parties having become desirous of closing the business, on the 26th of November, 1811, entered into a writing, signed by both of them, in which they recite, in substance, that by the terms of the original contract the legal interest on all sums advanced by Breckenridge for Brooks, was to have been paid annually, or a bond given therefor; but it being inconvenient for Brooks to pay the interest or principal when it became due, Breckenridge had postponed the collection of the same in consideration of Brooks’ verbal promise to pay an interest of 12½ per centum per annum, in the same manner that the legal interest was to have been paid, that is, *336 at the end of each year, the amount of interest if not paid as it became due, was to become so much principal: they then stipulate that they will settle upon the principles of allowing to Breckenridge compound interest at the rate of 12½ per cent. per annum, and agree that two annexed lists, the one of demand of Breckenridge against Brooks, and the other of credits or demands to which Brooks was entitled, should be credited on the settlement, and that errors or omissions on either side should be adjusted.
Brooks refused afterwards to close the settlement upon these principles, and filed this bill in chancery, alledging that there was an usurious interest reserved to Breckenridge by the original contract of 1799, as well as by that 1811, and prays that the accounts may be settled without allowing to Breckenridge interest on the advances made by him, and for general relief. By an amended bill be alledges, that in the lists of debits and credits recognised by the contractor of 1811 there are errors and omissions to his prejudice, a specification of which he subjoins to the bill. Breckenridge, in his answer, denies that the original contract reserved to him an usurious interest, or that he ever lent or advanced to Brooks any money for more than the legal interest; and he calls upon Brooks to produce the bond he gave to Brooks, which contains the terms upon which the money was advanced. He alledges that the surplus above legal interest, which Brooks stipulated in the contract of 1811, to pay, was intended as a compensation for his services in the management of the salt works belonging to the mortgaged estate. He does not admit that there are any errors or omissions in the lists of debits and credits recognised by the contract of 1811. Alledges that the vouchers, by which those lists could be verified, had been delivered into the hands of Brooks, and calls upon him to produce them.
The circuit court appointed a commissioner to adjust the accounts, and report the result: first taking the lists of debts and credits, referred to in the contract of 1811, and allowing Breckenridge an interest of twelve and a half per cent. per annum according to that agreement. Secondly taking the same lists of debts and credits, and allowing interests to Breckenridge of 6 per cent. on the advances made by him upon the principle of the act of assembly of 1799; and thirdly taking the same lists of debts and credits without interest, but with such omissions and surcharges as might ap *337 peal to be supported by the evidence in the cause.
Mortgager alleging that the mortgage money has been paid, can properly apply to equity to decree a reconveyance, and the power of adjusting the accounts of the parties follows as an incident.
The commissioner made a report accordingly, the result of which, when the accounts were adjusted, as first above directed, left a balance due to Breckenridge; but when settled in either of the other modes, left a balance in favor of Brooks.
The circuit court, on a final hearing, decreed Breckenridge to pay to Brooks the balance reported in his favor, upon the calculation made in pursuance of the second mode directed, together with the amount of surcharges and omissions to the prejudice of Brooks, amounting in the whole to the sum of $12,577 95. From that decree both parties have appealed to this court.
Previous to an examination of the merits of the case, it is necessary to notice an objection taken by the counsel of Breckenridge to the jurisdiction of a court of equity.
It is urged that Brooks had an adequate remedy at law, and that consequently there was no cause for the interposition of a court of equity. It is a sufficient answer to this objection that it does not appear that Breckenridge had reconveyed the mortgaged estate. The first is not alledged by either party, nor is the deed of reconveyance exhibited; and it cannot be pretended that a court of law is competent to compel Breckenridge to reconvey. That could be done only by a court of equity, and the power to adjust the accounts, and to decree the balance, must, as a necessary incident or accessory, follow the jurisdiction to compel the reconveyance according to the maxim “accessorium sequilur suum principale.”
But admitting the reconveyance to have been made, we should nevertheless be of opinion that a court of equity might entertain jurisdiction of the case.
What remedy at law could Brooks have had?
He could have had none upon the bond for a reconveyance; for that did not contemplate the receipt of the rents and profits of the mortgaged estate by Breckenridge, and the only covenant it contained on his part, was to reconvey. Upon the supposition, therefore, of a reconveyance having been made, he had performed his covenant. Nor could Brooks have had a remedy at law upon the contract of 1811 commensurate with the object of the bill in this cause; for had he sought a remedy by a suit at law, upon that contract, he must thereby have affirmed it: whereas the object of the present suit is not only to obtain a correction of the *338 details, but to avoid the principles of adjustment recognized by that contract. The bill is indeed predicated upon the idea that the contract of 1811 is not obligatory upon Brooks, on the ground of its being usurious; and assuming that to be the case, there is no doubt that he might maintain an action of account or of assumpsit for the rents and profits; but it is equally clear that a bill in chancery will also lie to compel Breckenridge to account for the rents and profits: For it is incontrovertably settled, that a court of equity has a concurrent jurisdiction with a court of law in matters of account. But if we suppose the contract of 1811 to be obligatory upon the parties, still we could not admit that it would preclude the filing of a bill for the adjustment of the accounts. It is true, where parties have settled their accounts and struck the balance, that unless there were fraud or error in the settlement, a bill for an account will not lie; and to such a bill a plea of stated account is held to be a good bar. But a plea of that sort, to sufficient, must set forth the balance: 2 Atkins, 379. And it must aver that the stated account is just and true: Atkins, 70, Metford’s Pleadings, 208. But in this case there was, in fact, no settlement of the accounts, nor balance struck, by the contract of 1811. It only purports to ascertain the principles and to recognize the data upon which a future settlement was to have been made. In whatever point of view, therefore, the case is considered, it is manifestly a proper one for the jurisdiction of a court of equity.
Courts of law and equity have concurrent jurisdiction in maters of account.
Where the parties have settled their accounts without error or fraud and struck the balance, the chancellor for has no jurisdiction.
On the merits of the case, it is contended on the part of Breckenridge, that he is entitled, in the adjustment of the accounts, to an interest of twelve and a half per cent. per annum upon the sums advanced by him, according to the principles of the contract of 1811; while on the part of Brooks it is urged, that Breckenridge is entitled to his principal only, without interest.
It cannot be pretended that Breckenridge is entitled to the twelve and a half per cent. merely for the loan or forbearance of the sums advanced by him; for that would be directly repugnant to the statute against usury. His claim is placed by his answer, and was attempted in the argument to be maintained only upon the ground that the surplus, above legal interest, was a compensation for his services in the management of the mortgaged estate. There is in the cause some parol proof of the declaration of Brooks, that *339 he was to allow Breckenridge twelve and a half per cent. for interest and his services. But the contract of 1811, which is more to be relied on, affords no color of support to the claim on that ground: on the contrary, that contract plainly imports that the agreement, on the part of Brooks, to give the surplus per cent. was founded exclusively upon the forbearance or the postponement of the collection by Breckenridge of the principal and interest of the sums advanced by him when they became due. But the doctrine is incontrovertably settled, that where a mortgagee or other trustee manages the estate himself, there is no allowance to be made for his trouble, and although there be an agreement to that purpose, yet a court of chancery will not carry it into effect; for equity will not allow to the mortgagee any more than his principal and interest: Powel on Mortgages, 1027; 1 Ver. 316; 3 Atk. 518, 2 Atk. 120.
Where a mortgagee or trustee mortgages the estate himself, no allowance is made for his trouble—Interest on the mortgage money is all chancery will decree.
Compound interest is not forbidden by the statute against usury, but it is held to be iniquitous, & chancery will not decree it, tho’ agreed to by the parties.
By the original agreement, as recited in the contract of 1811, Breckenridge reserved to himself compound legal interest upon the money advanced by him; and that is clearly not forbidden by the statute against usury; but it is held to be iniquitous and oppressive, and a court of equity will not enforce an agreement of that sort: 2 Salk. 449, Atk. 330.
It is evident, therefore, that Breckenridge can only be entitled to simple interest at the rate of six per cent. per annum upon the sum advanced by him. He would, indeed, only be entitled to his principal without interest, if, as Brooks alledges, the original contract, in pursuance of which the advances were made by Breckenridge, had reserved the usurious interest of twelve and a half per cent. But that does not appear to be the case; and the subsequent agreement for the payment of such usurious interest cannot affect the validity of the original contract, nor destroy Breckenridge’s claim to the interest of six per cent reserved thereby.
The circuit court, therefore, did right in allowing to Breckenridge, in the adjustment of the accounts, simple legal interest, and no more. And we perceive no error in that court decreeing to Brooks the amount of the errors and omissions to his prejudice, in the lists of debits and credits recognized by the parties in the contract of 1811.
Decree affirmed with damages, each party paying the costs of the appeals taken by him.
On rendering this opinion, the counsel for Brackeridge *340 petitioned for a rehearing, which was granted, and the cause was re-argued at the spring term, 1820. On the 6th June, 1820,
Interest is a compensation for the use of money, rents a compensation for the use of lands—compound interest (though agreed to by parties) will never be allowed;—so neither will interest be allowed on rent in arrear.
The Chief Justice delivered the following opinion.
In the former argument of this case, nothing was said in relation to Breckenride’s liability to Brooks for interest upon the rents and profits received by him, while in possession of the mortgaged premises, and the subject having wholly escaped the attention of the court in forming the opinion then delivered a rehearing was at the instance of Brackenridge’s counsel granted upon this branch of the case. It becomes necessary therefore, now to decide how far the decree of the circuit court, compelling Breckenridge to pay interest upon the rents received by him is correct or hot.
Whether we consider this point, with reference to general principles or to adjudicated cases the conclusion is equally clear, that Brackenridge ought not to be compelled to pay interest.
In the former opinion delivered in this case, we have seen that interest upon interest, will not be decreed, although the parties may have made an engagement to that effect: because it is unjust and unconscientious, and the same principle must equally forbid the allowance of interest upon rents and profits, for rent is nothing but a return or remuneration for the use of real estate, as interest is for the Use of money, and it must be as unjust to allow interest upon the remuneration in the former case as it is to allow it upon the remunerationn in the latter In analogy to general principles thefore there can be no doubt that interest upon rents ought not to be allowed, and if possible, there is still less room for doubt upon this point upon the score of authority. It is settled that a general interest will not be allowed upon the arrears of annuity, 2 Fonb. 424, note d. and the cases there cited, and with respect to rents it has been held that even in an action of debt, upon a lease where the rent was not secured by penalty, it was erroneous for the judge to give interst by way of damages. Cook vs. Wise and Newton, 3 Wilson, 3 Hen. and Mumford, 483, and if in such a case, wherethe amount to be paid is fixed by the express agreement of the parties, the law will not allow interest, much more will equity which follows the law, not allow interest upon rents in a case like the present, where the amount to be paid, is not ascertained by the agreement of the parties. It is accordingly, emphatically said by the chancellor, in the case of Ferries vs. Ferries, Talbott’s cases, 2 3; that interest *341 upon the rents and profits of an estate, was never decreed, the sum being entirely uncertain. We will not say that there may not be special circumstances which would justify allowing interest upon rents received by a mortgagee-but so far are the circumstances of this case from sanctioning the claim to interest, that they strongly forbid it. The proof in the case shews that Breckenridge managed the estate with great care and labor and much to the advantage of Brooks, yet we have seen in the former opinion, that upon general principles, Brackenride could not be allowed any compensation for his services; but notwithstanding he could not be allowed compensation for his services, his claim may be used to repel the claim of Brooks for interest upon the rents and profits, for it cannot be in itself less just than that of Brooks, and the latter is equally forbidden to be allowed upon general principles.
A mortgage in possession is liable for rents received, but as he can receive no compensation for services, he shall not pay interest on the rents received; the interest will be set off against the trouble.
Crittenden for Breckenridge, Pope for Brooks.
The argument that because Breckenridge received interest upon the money advanced by him for Brooks, the latter ought to be entitled to interest upon the rents received by Breckenridge, is certainly not well founded. The two claims do not stand upon the same footing.
The money advanced by Breckenridge for Brooks, was in discharge of debts which in general bore interest, and besides there was an express agreement on the part of Brooks to pay interest on the sums advanced by Breckenridge, whereas there was no such agreement on the part of Breckenridge, to pay interest on the rents received by him.
Some of the money advanced by Breckenridge for Brooks was no doubt that which he had received for rents, after he had obtained possession of the mortgaged premises. But as Brooks was allowed a credit for the rents as they were received upon the original debt due from him to Breckenridge, which bore interest, he can have no cause to complain on that ground. In fact until the extinguishment of the debt due to Breckenridge, the controversy about the interest upon the rents could not arise, and it is evident from what has already been said that on the rents afterwards accruing Brooks’ claim to interest cannot be sustained.
The former decree of this court, therefore affirming the decree of the circuit court, must be set aside and the decree of that court must be reversed and the cause remanded that an account may be therein taken, and a final decree entered, not inconsistent with this, and the former opinion of this court. Brooks must pay the costs in both appeals.

 Absent, Judge Rowan.