The Judges in this case delivered separate Opinions.
Judge Underwood :
— On the 10th of September, 1807, Alexander Macey, and Fenwick, the plaintiff in error, into a contract, from which it appears that Ma-cey advanced one thousand and twenty six dollars, twen-tv six cents to Fenwick, who thereupon conveyed three slaves (Ralph-, Ambrose and Ann) to Macey, who immediately hired them to Fenwick, at the rate of two hundred and fifty dollars per annum,
On the 1 st of May, 1807, it appears by a contract between the same parties, that Macey lent Fenwick eight hundred dollars, to secure the payment of which, Fen-wick assigned to Macey a lease on IÍ. Brock, upon which there was a rent reserved of two hundred dollars per an-num. It is agreed by this contract, that Macey is to receive the rent from Brock, and that if Fenwick does not return the eight hundred dollars within three years, then the whole lease and all its benefits shall be Macey’s. The lease of Brock expired on the 1st of January, 1819. Brock paid the rent to Macey j consequently, he received twenty four hundred dollars, in the course of about twelve years, for the eight hundred dollars lent.
On the 14th January, 1811, for the consideration of three hundred dollars, Fenwick made an absolute sale to. Macey, of a hundred and fifty, or a hundred and sixty acres of land, in which Fenwick held a term for eight years.
On the 17th September, 1813, for one hundred and twenty dollars, to be paid on demand, and in. consideration of covenants to keep in repair &c. Fenwick assigned and transferred to Macey, for the term of five years *277 and five months, all the residue of his land on Elkhorn, held under the lease from Cox to Edwards ; except the yard, garden, pasture, mill and timber yards, and the houses. This contract contains a stipulation, that whenever Fenwick pays the hundred and twenty dollars, the leased premises are to revert to him.
M. in 1803, takcspossession of one of the slaves.
Bill, by F. filed in 1822, to redeem the slaves, which he alleges were, in reality, only mortgag ed, and for a settlement.
Answer, by the ex’rs of Macey, (now deceased) relying on the lapse of time in bar of relief.
The contracts of salo — having been intended originally only as securities— are to be treated as mortgages.
On the 5th of September, 1813, Fenwick, for two hundred dollars in hand paid, conveyed to Macey, three yoke of oxen, a waggon, three horses and thirty five head (first choice) of hogs, — reserving, however, the liberty to redeem at any time before Christmas thereafter.
The evidence warrants the belief, that the use of the land, mentioned in the contracts of 1811 and 1813, for one or two years, at most, was fully worth the amount advanced by Macey for these lands ; and that the hire of the slaves was charged to Fenwick as cash, and constituted at least a part of the consideration or advances made by Macey for the land.
Macey, a few years after the contract relative to the slaves had been made, took Ann into his possession, and thereafter, the negro men continued with Fenwick, at a hire of two hundred dollars per annum. Ann has had five children.
In June, 1822, Fenwick filed his bill, asserting a right to redeem the slaves, upon the ground that the contract between him and Macey should be regarded as a mortgage. He, moreover, claims a settlement of accounts . between him and Macey, and for general relief, &c.
The executors of Macey, he having died before service of process, denied all personal knowledge of the transactions set forth in the bill, and insisted upon lapse of time as a bar to the relief sought.
There can be no doubt, that all the contracts between Macey and Fenwick, except that dated the 14th of January, 1811, should be treated as mortgages. Their principal object seems to have been, to secure the sums advanced, with an interest at the rate of twenty five per cent per annum. . The important question is, what length of time should bar the right of the mortgagor to *278 redeem slaves, and a term for years, in the hands of the mortgagee?
Bill dismissed in the circuit ct.
Statutes of limitation are rules of decision in chancery.
A bill to asseit a right of more than 20 years standing, in favor of one laboring under no disability, will not, in general, be sustained.— But there are exceptions : instance, — in behalf of an occupant defending his freehold.
The circuit court dismissed Fenwick’s bill, upon the ground, that as five years adverse possession was a legal bar to the recovery of a slave in an action at law, the chancellor should adopt the same rule, and apply it to bar the mortgagor’s equity of redemption, after the mortgagee had beén in possession five years.
The statute of limitations does not in terms apply to suits in equity. Still its provisions have, in many cases, been adopted by the chancellor, and furnish the rule of decision in his court.
It is a general rule with the chancellor,' that he will not entertain a bill to set up a right, in favor of a person laboring under no disability, after a lapse of twenty years. He will tell the man who sleeps upon his rights for twenty-years, to sleep on. There are, however, exceptions to this rule. One exists in behalf of the occupant of a freehold, who asserts an equity of more than twenty years standing, in order to protect his possessions. Whether-this rule has been adopted in analogy to the statute of limitations, which bars the right of entry after twenty years adverse possession ; or whether it is more properly based upon a presumed dereliction of right, and the mischiefs likely to result from asserting a stale demand ; or whether its proper foundation is a satisfaction of the demand to be presumed after a lapse of twenty years, in the same manner that we presume a bond to "be paid after twenty years, without accounting for the delay, are inquiries which need not now be discussed at length. Perhaps it might be said with truth, that the rule is supported by all these considerations, and that no one singly would be sufficient to account for its origin and application to all the cases. It is clear that the chancellor, in applying the rule, has allowed those to escape its operation who were able to bring themselves under any of th<e disabilities provided for in the statute of limitations; and therefore it may have been thought, that the rule itself, depends for its existence, exclusively upon the analogy which it bears to the statute.
Mortgagor cannot maintain a bill to redeem after 20 years possession by the mortgagee, unless the latter has made some acknowl-edgement of the right within that time. Post 381. See, also the opinion of the Ch. Jus. in this case.
The mortgagor srccana right to redeem, been assumed ^ee^andcontóo" ued’fbr 5 years
Nor after twen_ ty ye„rs, (in Jheirthe holding adverse, not'
It is agreed on all sides, that the chancellor will not ■entertain a bill in behalf a mortgagor against the mortgagee, to redeem the estate after it has been held twenty-years by the mortgagee, unless some acknowledgment of the mortgagor’s right in the mean timé, can be satisfactorily shewn. Those who place the existence of the rule exclusively upon analogy to the statute, however, contend, that as five years is the limitation at law for the recovery of a slave adversely held, the chancellor is bound to modify the rule in relation to slaves, so as to beep up the analogy, and preserve uniformity as to the rights of litigants in courts of law and equity. It cannot be.denied, that courts of equity ought, in adopting and applying rules, to be governed by that policy which the legislature of the country prescribes. The chancellor does conform to it. If the limitation of a writ of error be ten years, the chancellor will allow a bill of review within that period. If the legislature reduce the limitation to five or to three years, the chancellor conforms to the change, and will not allow a bill of review unless it be prosecuted within the period thus shortened.
Upon the same principle, of conforming to the policy indicated by the legislature, the chancellor should,where slaves are adversely held by the mortgagee, for more than five years, refuse a redemption when applied for by the mortgagor. To put a strong case, if possession of a slave be with the mortgagee, and he were to notify the mortgagor that his right to redeem was denied, and that the mortgagee held the slave in his own right, free from incumbrance, the chancellor could give no relief after five years acquiescence on the part of the mortgagor, in the possession of the mortgagee, under such circumstances. If he did, it wouldfiustrage the policy of the legislature, as manifested by the statute.
The time which the mortgagor of a slave has to redeem in, may therefore depend upon the nature and character of the possession held by the mortgagee. If the possession be adverse, he must seek his remedy within five years. If it be not adverse, he may have twenty years to redeem, but no longer. Why not a longer time when the possession is not adverse ? Because, after twenty *280 years, the equity is stale, an.cl the presumption is strong, that the mortgaged debt is satisfied; and good policy requires, that things long acquiesced in, should not be disturbed, on account of the difficulty of reaching the whole truth in regard to them.
A mortgagee in possession (who has not clearly manifested his intention to hold as absolute owner,) has a title and possession not adverse to, nor inconsistent with, the rights of the mortgagor. The mortgagee’s estate, in many respects, resembles a trust; and he is generally considered in chancery as a trustee :in whose favor the principle of the statute of limitations, or bhr by lapse of time, does not apply, until a satisfaction, or dereliction, of the demand secured by the mortgage, must be presumed. The right of the mortgagor of slaves to redeem, is not li-years; he may ™vherenhthere hasbeenno adverse holding of five years duration,) at" any time within 20 years after the right accrued. And the mortgagee may enforce payment of his mortgage money, by bill of foreclosure, at any time, within 20 years. [Ch. Jus. concurs : see his opinion, post.— Judge Nicholas thinks the right of redemption should be barred after five years. See Dissent,post,288.1
*280 It becomes important to enquire what acts constitute an adverse possession on the part of the mortgagee. It has been contended, that as soon as he reduces the mortgaged property to possession, he holds it adversely. That cannot be the law. The title of the mortgagee is absolute in'appearance merely. Originally it was in substance absolute after forfeiture of the condition. But courts of equity interposed, and created the right of redemption after forfeiture, for the. purpose of relieving misfortune and restraining avarice. The equity of redemption, as it is called, so created, is attached to theestate in the possession of the mortgagee, and he holds it subject to this equity. His holding is entirely consistent with this equity, and not adverse to it, unless some act is done demonstrating an intention to hold the estate as the absolute property of the mortgagee, disencumbered from, and at war with, the mortgagor’s right to redeem. The mortgagee coming into possession by ejectment, detinue, or consent, nothing being said or done to the contrary, takes the property, and holds in conformity to his title, and that title is consistent with the mortgagor’s equity, which goes with the estate ; and therefore the possession is not adverse. The mortgagee holds, in many important particulars, as a trustee, and he is often called a trustee in the books. He has certainly an interest, and he holds for his own benefit, as well as' that of the mortgagor. He has the right to appropriate the profits to his own use and benefit, and is not compelled as in ordinary trusts, to pay them over, annually, to the mortgagor, as cestui 'que trust. But then, the profits thus appropriated, must be applied to the extinguishment of the mortgagor’s debt, and when the whole debt is discharged, the profits thereafter must be paid over, with the estate, to the mortgagor. The mortgagee holds the estate subject to these well settled principles, and being a trust in many important respects, the statute of limitations has no ap *281 plication. Chancellor Kent, in the fourth volume of his Commentaries, 160 — 1 says, “ the mortgagee in possession holds' the estate strictly as a trustee, with the duties and obligations of a trustee; and if he takes the renewal of a lease, it is for the benefit of the estate, and not for his own benefit. He can make no gain or "profit out of the estate which lie holds merely for his indemnity.” He has uniformly been required by this court-, to account for the profits. Hard. 6. 1 Bibb., 198. Reed vs. Lansdale. Ballinger vs. Worley. In the case of Breckenridge vs. Brooks &c. 2 Mar. 339, mortgagee in possession is treated and called a trustee, and as.such refused an allowance for his trouble in managing the mortgaged estate. In Morgan’s heirs vs. Boone’s heirs, 4 Mon. 297, the court regard the mortgagee upon the footing of a trustee, so far as to prevent him from purchasing in an adverse title, and setting it up against the mortgagor. These are the leading cases, and their principles have been invariably followed. The conclusion from them, is, that the estate held by mortgagee in possession, although not a technical trust, created by express contract, and evidenced by a formal conveyance, is nevertheless of that character of trusts denoininated constructive in the books. Equity construes it into a trust, for the purposes of justice, in the same way that it has created a right to redeem, in the face of a conveyance which has become absolute.
The application of the statute of limitations in cases of trust, is considered at length in Kane vs. Bloodgood, 7 John. Cha. Rep. 111. Chancellor Kent there refers to the case of Lockey vs. Lockey, decided in 1719, by Lord Macclesfield, and says its doctrine is, “that the trusts which are not within the statutes, are those which are creatures of the-court of equity, and not within the cognisance of a court of law.” This rule fully embraces the case of of mortgagee in possession, if he holds in trust. There is no way to reach him at law, and without the aid of the chancellor, he Would hold the estate, and all its profits forever.
It may be said, that the doctrine of Lord Macclesfield would allow an indefinite period for the assertion of an equity of redemption, and prove that there was no bar, *282 or that the mortgagee in possession could not be a trustee, That he does occupy the attitude of a trustee for many purposes, has already been shewn ; and that twenty years possession by the mortgagee, nothing else appearing, does'bar a bill filed by the mortgagor to redeem, he laboring under no disability, is indubitably settled by an irresistible current of authority. And most of the authorities, it may be urged, make the bar operate, upon the ground, that the statute of limitations is the foundation of the chancellor’s rule. If, then, it be the statute which bars a redemption in land after twenty years possession by the mortgagee, why shall not the statute bar a redemption in a slave after five years possession ? All difficulty in giving a satisfactory answer, will probably vanish, by a few remarks founded on obvious principles.
In the first place, the rule in respect to trusts “ which are creatures of the court of-equity f is not one which allows the mortgagor a period without limitation in which he may redeem. The rule, aslaid down by Lord Macclesfield, only says the statute will not apply. But it does not thence follow, that the chancellor will not apply a limitation of his own creation. This he will do upon Lord Redesdale’s principle, quoted in Kane vs. Bloodgood, that every new right of action in equity, that ac-ernes to the party, whatever it may be, must be acted upon at the utmost, within twenty years.” -Or upon Judge Pendleton’s idea, that the chancellor refuses to let the mortgagor'redeem after the lapse of twenty years, not in analogy to the statute which takes away the right of entry, but because of a presumed dereliction of right resulting from lapse of time, in the same manner that a bond or judgment is presumed to have been paid after twenty years, unless something appears to repel the presumption. Ross vs. Norvell, 1 Washington, 14. This last case was a redemption of slaves after five years.
But, secondly : if jt be granted that the limitation of .. . , , , , , , , twenty years is based upon the statute exclusively, does it necessarily follow, that the chancellor must apply a limitation oi five years, when the mortgagor seeks to re-^eem a slave ? The letter of the statute does not apply to suits in equity. , The chancellor adopts its spirit and *283 policy, and these, if not directly opposed to a limitation of five years, as the time within which a slave should be redeemed, fail to furnish any satisfactory reasons in favor of such a rule. Why does the legislature prescribe a limitation at all ? It is, because those who lie by for a long time, and will not assert their rights, are presumed to have none. The moving spring of human action is self-interest ; and men are rather apt to be too forward in asserting claims unsupported by right, than to delay bringing forward just demands. Consequently suspicion falls with propriety upon a stale demand. Its age furnishes reason to apprehend, that its assertor’s negligence has been the result of cunning — with a view to take advantage of the death or removal of witnesses, or the like, rather than a careless disregard of his interests. Looking to the spirit of the. statute, how ought a chancellor to apply it in favor of a mortgagee let into possession of a slave or chattel? He is not presumed to be satisfied short of twenty years, and at any time within that period, he may have his action at law upon his bond. A presumption cannot arise in less time, that the mortgagor is without right, or that he has abandoned his right, especially when the slave goes into the hands of the mortgagee as a vivum va-dium, and is daily extinguishing the principal or interest of the debt. The mortgagor' derives a benefit, as well as the mortgagee, and therefore, it may be entirely compatible with the interest or selfishness of the mortgagor, to acquiesce in the possession of the mortgagee. The statute, founded upon the principle, that submission to a deprivation of property, is evidence of abandonment .or want of right, cannot therefore apply, in spirit and policy, to a case where it may be the interest of the equitably owner to permit the holder of the legal title to possess for five"years. When all the considerations are united, to wit, the trust character of the mortgage e ;■ the want of ground to presume a dereliction of right by ¡.ae mortgagor, or that the mortgagee has been p¡ id, md the interest which the mortgagor may feel in p rmitting the property to go into the hands of the mortgagee — they are sufficient to repel the reasons urged in favor of adopting.five years as a bar to the redemption of slaves.
View of the toshowhowthe mortgagee in and that his pos session was not ificholas^ takes a different viev. post, 287.] ’
.If five years were sufficient to bar the mortgagor's equity of redemption in a slave, the same time ought to bar the mortgagee’s lien. There should be reciprocity in the rule. Is not the possession of the mortgagor after forfeiture, just as adverse in its character as the possession of the mortgagee ? If such possession for five years, by the mortgagor,would destroy the lien, it would tend to make rigorous- collectors o'f indulgent creditors. They must fcoerce payment, or lose their securities. A mortgage isa mere security — an appendage to the debt. It would lose its character if five' years lapse should exonerate the chattel from the lien, and thus separate what the law has united. The one should continue as long as the other, and the possession' of the mortgagor should •be regarded as compatible with, and not'adverse to, the 'rights of the mortgagee, and vice versa.
The case is brought down to the enquiry,whether Ma~ cey any act which converted his possession of the slaves into an adverse and hostile one. If he were a trustee, in the technical sense’ of the term, an adverse possession might1 aid him. “ So long as the trust is a subsisting one, and admitted by the act or declarations of the parties, no doubt the statute does not affect it, but when such transactions take place between trustee and cestui que. trust, as would, in the case of tenants in common, amount to an ouster .of one of them by the other, I can hardly suppose that a court of equity, would consider length of time after-wards as of no consequence.” Kane vs. Bloodgood, (supra.)
The evidence shews, that Macey frequently expressed his willingness, if he did not expressly acknowledge Fenwick’s right to redeem, long after the slaves became his absolute property, according to the face of the papers. Voorhies proves Macey’s admissions, that there were large and unsettled accounts between him and Fen-wick. u Deponent also called upon Macey, at the request of Fenwick, to settle their accounts, and there were several appointments made, but for some cause or other, they never all got together.” Such appointments and acknowledgments are inconsistent with the idea of an adverse possession of the slaves. The time when these acknowledgments and appointments were made, does not dis *285 tinctly appear. They are not relied on to take the case out of the operation of the statute, but to negative the idea, that Macey did any act which ought to bring his case within the influence of the statute. The-control and use of the property, coming into possession by consent, as mortgagee, is not hostile, or adverse.
It may be urged, that the money advanced by Macey to Fenwick, for the slaves, together with legal interest thereon, was more than paid, five years previous to the institution .of this suit; and that the possession of Macey should be regarded as adverse from the time that he had received his principal and legal interest. Conceding that the mortgagee who retains the estate after his debt is fully paid, is thenceforth a wrong-doer ; and that the chancellor might, on that account, find sufficient reason to limit the right to redeem a slave to five years thereafter ; yet in the present case, there are strong grounds on which to resist'the application of such a rule. The transactions between-Macey and Fenwick were usurious. Although the principal and legal interest were paid more than five years before the institution of this suit, the debt was not discharged, as the parties recognised it to exist. Fen-wick was paying, and had been paying for years, usury at the rate of twenty five per cent, per annum, or very near it; and if his payments should be applied towards the extinguishment of the usury, then there would remain a balance of the principal due within five years next before the institution of this suit. Can Macey now insist, that the principal and legal- interest were more than paid five years before suit brought, by making the application of the usury received to their discharge, and thereby lay the foundation for an adverse possession from, the extinguishment of the debt ? He ought not to be permitted to do it. Were it allowed, he would first violate the law by usurious exactions, and then take advantage of his own wrong, to protect himself against an equitable demand for an account and surrender of the property. Such a result cannot be tolerated. On the contrary, as he insisted that Fenwick owed him largely, and as Fenwick paid upwards of seven hundred dollars, in 1817, according to his account, the debt, as the *286 parties regarded it, was not fully discharged until within five years next preceding the institution of this suit. Under such circumstances the limitation should only be-gin to run from the time at which both parties regarded the debt paid, or ought to have so regarded it, including the' usury. •
The mortgagee in possession of slaves, is liable ' to the mortgagor, for hire ; —an allowance for raising to be deducted from the hire. But hire -accrued 5 years before the suit, cannot be recovered ; because of the bar by lapse of time.
Five years bars the^ claim, of one who assigned a lease, a security, for the rents which the assignee received and retained for usury.
The foregoing principles when applied to this case lead to the following conclusions :—
First. That Fenwick is entitled to redeem Ann and her children. Ancl as it satisfactorily appears, that Macey received his principal and Jegal interest thereon, more than five years before the institution of this suit, the redemption must be effected by taking an account of the hire of -Ann and her children, for five years before the commencement of the suit, down to a day, to be fixed, when they shall be surrendered; and after deducting therefrom a proper allowance for the expense of raising &c. the balance, if any, must be decreed to Fenwick, with the slaves.
Second. The [base on Brock, assigned to Macey, was a security, and covered a large amount of Money. .Fenwick is entitled to no relief on this transaction, except for the two last years rent. The rent for the other years, after paying the eight hundred dollars, and legal interest, cannot be recovered ; because Fenwick’s right is barred by time. But as to the rent of 1817 and 1818, to wit, four hundred dollars, for the two years, Fenwick must have a decree for it; and if the raising of the young negroes should exceed (lie amount of hire, then the excess must be deducted from said four hundred dollars.
Third. Fenwick’s title to Ralph and Ambrose should be confirmed, and the purchase made of them by his son, should be'cancelled. Fenwick should recover no hire for these slaves, as they remained in his possession.
Fourth. All other matters between the parties, are either not sufficiently put in issue by the pleadings, or are barred by time, and no further attention need be given to them.
Wherefore, the decree is reversed, with costs, (Judge Nicholas dissenting,) and the cause remanded for pro‘ceedings in .conformity to this opinion.
Dissent , of Judge JVicho-las. — ,His view of the evidence; and conclusion, that tho defendant’s testator did not hold the slaves, as mortgagee ; but took 'a title indefeasible after the expiration of. two years allowed to the plaintiff to redeem in. — > His opinion, also, that if the sale was to be treated as amort gage, yet after the mortgage debt was,in fact, discharged, the mortgagee’s con ■ timied possession ought to be considered— there being no admission on his. part to the contrary — as adverse to the right of the mortgagor ; and- that^, the possession having so rel-mained for jive years, the mort gagor’s biil for redemption was barred by force of the statute.
'Judge Nicholas
: — In 1807, Fenwick made a biil of sale to Macey, for two negro men and a woman, redeemable in two years, on the payment of a thousand and odd dollars. This though ostensibly a redeemable purchase, yet, according.to settled rule, is treated by the courts only as a mortgage. Fenwick agreed, to pay two hundred and fifty dollars a year, as hire for the negroes ; and if they died before the end of the two years, the loss was to be his. In 1809, Macey took the woman into .possession ; Fenwick retaining the men, and agreeing to pay two.hunclred dollars^ year as their hire. .Macey confined in the undisturbed possession of the woman till June, 1822; when Fenwick filed his bill to redeem.' The •right to redemption is met, by the. executors of Macey, by a plea of the statute of limitations.' From the allegations of Fenwick, it is very clear, that He had paid offthe mortgage debt', with its legal interest, more than five years before the -institution of the suit, and there is. no proof of any acknowledgment, or recognition, of the right of Fenwick to redeem, by Macey,within five 3rears before suit. It is also in proof, that, as far back as 1815, Fenwick frequently insisted, in quarrels with Macey, that he had more than paid the mortgage debt. Fen-wick alleges, that l.ie paid Macey, by sawing done, and lumber furnished for him, from-1812to 1817, inclusive. In January, 1811, Fenwick executed another mortgage to Macey, on other property, for the payment of three hundred dollars, which it appears was the balance of hire then due. The accounts exhibited by Fenwick of payments made in the years 1812-13-14-1!5 and 16, shew, that, prior'to 1817, he had paid off all the hire that could have accrued from January, 1811, to 1817, together with the priñcipal'of the sum for which the. bill of sale of the negroes was originally executed, or if there was any balance, it was very trifling, and must have been absorbed before June, 1817, by .the large account for sawing, which Fenwick says was incurred during all that year. ' " '
My understanding of the proof, is, that Macey never did admit, nor did Fenwick claim, that Macey held the negroes as. mortgagee. ' On the contrary, the inference I *288 deduce from the proof, is, that they botir considered Macey as having the absolute right, after the expiration of the.two years allowed to redeem, if he chose to exercise it. The declarations of Macey, repeatedly made, ■ J , . that he was bcnwick’s friend, that he wanted no advantage of him, that he should have the right to redeem at any time by paying the balánce due, &c. I understand as a mere disclaimer of any intention to avail himself of the advantage he supposed himself to hold, as absolute owner of the property then, and not as a recognition of any right in Fenwick to redeem,'independent of Macey’s will, or as an admission, that the original transaction was a mortgage. There is no proof whatever of any such dec-Iarations-subsequent to 1816. One witness states that iu-1809, both Fenwick and Macey told .him the latter had purchased the slaves for twelve hundred dollars.
Examination of wbethei-thebar from Hpse of nisedinchance-ry,is adopted in the^°legislative will, indicated by acts limiting the times suits at lawmay bo brought; or Sons °of public-policy,pvesump tion o°/righqthé probable injus-. ciahns°§-e. — and conclusion,that eery, as’ at law, tostatute604 °f
As to the woman, therefore, and her issue, who are the principal subjects of controversy, -I consider Macey as having had an adverse possession, undisturbed, from 1809, when he first took possession, until the institution of the suit, and consequently, that Fenwick’s right to redeem is barred by the statute of limitations.
But should I be mistaken in this view of the case, then the question is presented, whether a mortgagee of a slave, who takes possession originally ás mortgagee, and.whose debt is afterwards discharged, more than five years before the institution of suit, is protected against the mortgagors’s right to redeem, by the statute ; there having ¿een n0 admission, or recognition, of the right of re- : ? demption, or of a holding as mortgagee, within the five yea,N The proper solution of this question depends essentially'upon ascertaining the true principle,>or basis, of ^ie bar from lapse of time, applied by, the courts to all equities of redemption.
bi fbe leading'case of Ross vs. Norvell, 1 Washington, 14, Judge Pendleton expressed an obiter opinion, that, the rule which bars an equity of.redemption-of land after twenty years, is not based on any analogy to the statute of limitations; but exclusively upon a presumed derelic-^on ’ because, if the statute were made to apply, it would not be the limitation of the right of entry that *289 would be adopted, but that of the writ of right, and because of a supposed trust between the parties, which he said, is not within the operation of the statute. This opinion received an obiter recognition and confirmation from this court, in the case of Young vs. Wiseman, 7 Mon. 270, and was apparently acted on, and became the ground of decision, in Mims vs. Mims, 3 J. J. Mar. 103. Dicta are also to be found in other books of respectable authority, that the redemption of lands is barred after twenty years, upon a presumed release, in analogy to the presumption of payment of a bond or judgment. If thesé authorities contain a correct exposition of the law, I should be inclined to concede, that five years possession of a slave by the mortgagee, after payment of the debt, would not bar the equity of redemption ; for if there be such a trust between mortgagor and mortgagee, as will prevent the statute from running in favor of either, it would be difficult to create a bar short of twenty years, unless there has been some overt act- of a determinate character on the part of the mortgagee, indicative, or productive, of an adversary holding.
But after a thorough examination of the subject, I have a firm conviction, that the rule was not adopted on the mere presumption of a dereliction of the right, but in obedience to, and in strict conformity and analogy with, the statutory limitation of the right of entry. The rule adopts all the disabilities provided for by the statute, and allows none other. In England, it gives ten years after removal of disability, and no more, without reference to the time of its ceasing, whether within or after the twenty years. It does not allow the lapping of disabilities. When time once commences running, it continues, notwithstanding the intervention of a disability. All this was announced in the early case of White vs. Ewer, 2 Vent. 340, and has been uniformly followed ever since. In that case, where the Lord Keeper was assisted by two justices, it was declared, that though such matters were to be governed in equity by the course of the court, yet that mortgages should not be relieved after twenty years. For that the statute did adjudge it reasonable to limit the time of one’s entry to twenty years, un *290 less there be such particular circumstances as may vary the ordinary case, as'in facts, femes covert &c. provided for by the very statute, for it is best to square the rules of equity as near the rules of reason and law as may be. In Jenner vs. Tracy, 3 P. Wms. it was said, “that as twenty years would bar an ejectment, there was the same reason for allowing it to bar a redemption.” See also, Belch vs. Harvey, 3 P. Wms. 288. Demarest vs. Wynkoop, 3 John. Chy. 129. Cov'ty’s Powell, 363. Matthews on Legal Presumptions, 345 to 368.
This full adoption of the statutory bar throughout, shews, conclusively, that the rule is not based upon a mere presumed dereliction ; for legal presumptions do not work by any such arbitrary, inflexible standards; but give and yield, and adapt themselves to the circumstances of each particular case, as they arise.
In Aggas vs. Pickerell, 3 Atk. 225, Lord Hardwiclte, after an investigation of the authorities, was disinclined to allow a demurrer to a bill for redemption, after twenty years, because it would go to preclude the complainant from shewing himself within some of the exceptions to the statute, yet he sustained a plea of the statute. Now, this could not be done unless the statute, exproprio vi-gore, operates upon a bill in equity, or,which is the same thing, becomes, when passed, a rule of court, by adoption. For there is a plain distinction between length of time as a bar* and as mere evidence of a bar. In the former case, it amounts to a positive rule ; in the latter it is mere presumption, and is in itself no legal bar. And the evidence of a fact can properly no more be plead in chancery than at law. Good pleading, in either court, requires, that facts, and not the mere evidence or presumption of them, should be relied on by way of plea in bar. If twenty years possession by the mortgagee, creates but the presumption of the fact of dereliction or release on the part of the mortgagor, there would be the same necessity for pleading and relying on the release or dereliction in chancery, that there would be for pleading payment to a stale bond, when its antiquity is relied on as-the evidence of payment.
*291 The supreme court in Elmendorf vs. Taylor, 10 Whea. 168, evidently deduce the conclusion from a review of the cases, that lapse of time is a bar to redemption, in analogy to the statute of limitations. The court, also, in that case, vindicates the propriety,of limiting all equitable claims in analogy to the limitation of the right of entry, instead of the writ of right, as contended for by Judge Pendleton. From a review of these authorities, it cannot be doubted, that if the right of entry had been limited to twenty five years, the same period would have been allowed for redemption, notwithstanding the presumption of payment of a bond had remained at twenty years.
The adoption of the statute, is by no means peculiar to the case of mortgages, but pervades the whole system of equitable jurisprudence. It was in settling the question, that a bill of review should be restricted to twenty years, in analogy to the English limitation of a writ of error, in the case of Smith vs. Clay, Amb. 645, and 3 Bro. Ch. 639, that Lord Camden used the following pertinent, forcible and often quoted language: — “ As the court has no legislative authority, it cannot properly define the time of bar, by a positive rule to an hour, a minute, or a year; it was governed by circumstances. But as often as parliament had limited the time of actions and remedies to a certain period in legal proceedings, the court of chancery adopted that rule, and applied it to similar cases in equity. For where the legislature had fixed the time at law, it would be preposterous for equity, which, by its own proper authority, always maintained a limitation, to countenance laches beyond the period that law had been confined to by parliament. Therefore, in all cases where the legal right has been barred by parliament, the equitable right to the same thing has been concluded by the same bar. Thus the account for rents and profits, in a common case, shall not be carried beyond six years. Nor shall redemption be allowed after twenty years possession in a mortgagee.”
In Hovenden vs. Annesley, 2 Sch. and Lef. 637, Lord Redesdale said : “ courts of equity have constantly guided themselves by the principle, that whenever the legis- *292 Tature has limited a period for law proceedings, equity will,, in analogous cases, consider the equitable rights as barred by the same limitation.” And in Bond vs. Hopkins, he thought the statute must be taken virtually to in - clude courts of equity. In Medlicott vs. O'Donnell, 1 Ball and Beatty. Lord Manners said the court was bound to adopt the statute, in cases where the equitable and legal title so far correspond, that the only difference between them, is, that the one must be enforced in chancery, and the other at law. See Kane vs. Bloodgood, 7 John. Chy. and Elmendorf vs. Taylor, 10 When, to same effect.
In Thomas vs. Harvic, 10 Whea. 146, the language and doctrine of Lord Camden are cited with approbation, and a practical application made, by reducing the time allowed for a bill of review to live years, in analogy to the limitation prescribed by congress for a writ of error.
A still stronger practical illustration of the principle is to be found in Kane vs. Bloodgood,where Chancellor Kent frankly recants a previous decision, in which he determined that twenty years was the limitation to a bill for a legacy in conformity to the English rule, without having adverted to the fact, that a statute of New York had authorized suits at law for legacies, which he supposed would bring them within the legal limitation for personal actions in both courts.
The argument of -Judge Pendleton — in opposition to all this authority — that the bar to an equity of redemption of real estate, is based exclusively upon a presumed dereliction of right, and not upon an analogy to the statute- of limitations, cannot be deemed of any validity whatever. But I will go a step further, and investigate more particularly the force of his objection to the application of the statute, “ because of a supposed trust between the parties.”
it is true there is a quasi trust, as between mortgagor and mortgagee. The books are full of dicta to that effect. The mortgagee can make no profit out of the estate beyond his debt; but when let into possession, is bound to account for the rents and profits, and is allowed no compensation for his services. And we have been referred to the language used, 4 Kent's Com. 160, where it;is said--
Points of differ-' ence between es tates held strictly in trust, and those held under mortgages. Deduction there from, that parties to the latter are not, like those to the former, exempt from the effect of the statute of limitations, or bar from lapso of time.
"The mortgagee in possession holds the estate strictly as a trustee, with the duties and obligations of a trustee, and if he takes the renewal of a lease, it is for the bene-it of the estate, and not for his own benefit.” This lan- , ' . . ,., . , . guage must be taken with great qualification, tor though it may be comparatively accurate, in reference to the subject about which the learned commentator was treating, that is, to shew the mortgagee can make no gain or profit out of the estate, yet it is certainly far from accurate, to say of the morgagee, that “ he holds strictly as a trustee” in every respect. That strict relation certainly does not subsist.
There are, no doubt, points of similitude between the attitude of a mortgagee and a trustee. But the points of difference and dissimilitude are many, broad and obvious. In the general, a mere trustee has no interest in the subject of the trust, nor is he allowed to acquire any; whereas, the mortgagee has a direct and important interest in the mortgage property, and can purchase for himself, under execution or otherwise, the equity of redemption. The trustee cannot turn the cestui que trust out, or obstruct his getting into possession. The mortgagee can do both. The trustee iiolds for the exclusive benefit of tlie cestui que trust. If the mortgagee holds for the exclusive benefit of either, it is for his own, and not that of the mortgagor. The satisfaction of the mortgage debt, it is true, is a mutual benefit •, but in taking possession, the mortgagee does it with an eye to his own exclusive advantage. He may do it with the assent of the mortgagor ; but may, and often does, do so, without such assent, and even in despite of the mortgagor. Therefore, though there be a resemblance, yet the analogy is far from being complete and perfect throughout.
Tiie distinction between them has been noticed and descanted upon by an eminent cliancéllor, in these terms: “There was a vast difference between trusts, some being express, some implied ; some relations formed between individuals, in matters of dealing with each other, and in which it could hardly be said that one was trustee, and the other cestui que trust; and yet it could not be well denied, that for some purposes they were so. Of *294 this kind, he took the relation of mortgagor and mortgagee tó be. In the case of a strict trustee, it was his duty to take care of the interest of his cestui que trust, and lie was not permitted to do any thing adverse to it; a tenant had also a duty to preserve the interests of his landlord; and many acts, therefore, of a trustee or tenant, which if done by a stranger would be acts of adverse possession, would not be so in them, from its being their duty to abstain from them. But the case of a mortgagee was different, lie being at liberty to hold possession, and not becoming strictly a trustee until the money was tendered, and having a right, if he continued in possession for twenty years, to turn round on the mortgagor, and say the estate was his own.”
. Another distinguished Judge has held, if possible, still stronger language on the same subject : “It is said that the mortgagee is a trustee for the mortgagor. This is founded on mistaken notions of the resemblance of the characters of mortgagee and trustee. The mortgagee, when he takes possession, is not acting as trustee for the mortgagor, but independently and adversely, for his own use and benefit. A trustee in equity is stopped from dispossessing his cestui que trust. A mortgagee .cannot be stopped, because'in him it is no breach of trust. This presents no resemblance to the character of a trustee, but to a character directly opposite. It is in the opposite character he accounts for the rents when in possession. He does not, like a trustee, possess a title to the legal estate, distinct and separate from the beneficial and equitable.” Cov'ty's Pow. 1153.
Until recently, it was deemed a question still afloat in the English courts, whether a mortgagee out of possession for twenty years, was barred in the same manner as the mortgagor would be under like circumstances. Cov'tys Pow. 391. Malth. 369. The analogy to the case of mortgagor, and the application of the statute, was denied on the ground, that the mortgagee should be presumed, in possession, the mortgagor being but his tenant at will, and the mortgagor’s possession, therefore, in legal strictness, his. When this argument, together with some cases which give it an apparent countenance, came to be urg *295 ed, on a recent occasion, before Sir T. Plummer, he said: “ It was based, on a mere fiction ; for there is no actual tenancy, no demise, express or implied. The mortgagor has not even the rights of a tenant at will: he may be turned out of possession without notice, and is not even entitled to emblements. It is only quodam modo a tenancy at will. We cannot push it to that extent, reasoning on the supposed relation of landlord and tenant, which is not founded in fact. If twenty years possession will not operate a defence against the mortgagee, I do not see how any period of time, however long, can bar him. If the fiction of a tenancy at will, is an answer to the objection after twenty years, why will it not be an answer after any other time ? There would be no stopping.” This opinion Matthews thinks has put to rest the doubts on that subject. If any such ever existed in this country, they have long since been settled.
Enough, and perhaps more than enough, has been said to shew, there is no such trust relation between mortgagor and mortgagee, as will prevent the latter from being protected by lapse of time, and that it does, per se,-con-stitute a distinct substantive bar, either from the operation of the statute, exproprio vigore, upon suits in equity, or by a rule of court which uniformly adopts such statutes as soon as passed. It is true, there is such a consistency between the possession of mortgagee and the right of the mortgagor, before payment of the mortgage debt, though no trust, as ordinarily presents the absence of such adversary possession as is requisite to make the statute run. And this it is, that prevents the mortgagor from being barred of his equity of redemption in a slave, after five years possession of the slave, the debt unpaid. The true reason of the bar after twenty years, is to be found in the general rule of equity, founded on analogy to the limitation of the right of entry, which bars every equitable demand, except express trusts, after twenty years. As stated by Lord Redesdale, in Hovenden vs. Annesley, 2 Sch. and Lef. 607, every new right of action in equity, whatever “ it may be, must be acted upon at the utmost within twenty years. If a mortgagee has been in possession for a great length of time, but has acknow- *296 leclgec! that his possession was as mortgagee, and there» fore Bable to redemption, a right of action accrues on that acknowledgment. But if not pursued within twen-years, the statute may be pleaded ; and so in every case of equitable title, (not being the case of a trustee, where possession is consistent with the title of the claimant,) it must be pursued within twenty years.”
After the payment of the mortgage debt, there is no longer any consistency between the posssesion of the mortgagee and the right of the mortgagor ; and there being no such trust between them as prevents the statute from operating, it commences running, and must constitute a bar whenever the same right, if it had been a legal one, would have been barred at law. Thus in the cases of Welch mortgages, there is in the general no prescription to the right of redemption ; yet it is held that twenty years possession by mortgagee, after payment of the debt, will bar a bill for redemption of such mortgage. Cov'ty's Pow. 377-380. So where a conveyance of real estate was made to a creditor, until he received his debt out of the rents, though it was held, the statute would not commence running until the debt was paid, yet the creditor having retained the possession for more than twenty years after payment of the debt, redemption was refused. Yates vs. Hambly, 2 Atk. 360. And so here, as the action at law for the recovery of the slave, would be barred in five years, if Fenwick’s right were a legal one, his equity of redemption must be barred by the same time, he not having brought his suit within five years of the period when the debt became extinguished, and Macey’s possession thereby rendered inconsistent and adversary.
No just exception can be taken to the adoption of five years as the term for redeeming these slaves, because the mortgage or other instrument evidencing the right, is a deed, or in the nature of a specialty. That circumstance weighs nothing in an action at law, in answer to a plea of the statute; neither should it weigh any thing here. The suit in both courts is substantially for the specific thing, and the same limitation is justly applicable to *297 ■each, no matter how the claimant’s title is derived, wire-thcr by deed, or by parol.
Ch. Jus.Rob-ERTSOJi’s Opinion.
Equitable claims should, in general, be asserted within twenty years from the time when the right accrued. But particular considerations, as á recognition of the right, disability of tli’e claimant fyc. may constitute exceptions to thegen-eral rule.
The possesa;OE of a mortgagor, bein™ammahle’ the statute of not affect t^e fight ?f either, kw.^Butifthe character of the possession be changed from amicable to ad-ute then begins t0 nm-
aft®1", 20 years, the claim 0f either party will bepresum-e(] — where nothing appears to rebut the presumption — to have been extinguished, the possession to have been adverse from <he beginning, and the right of redemption, barred by lapse of time.
For these reasons, I dissent from so much of the de-cisión of the court as allows redemption of the woman and her children. - '
Chief Justice RcbeRTsob
: — The character of the thing mortgaged, whether it be a slave, or land, cannot affect the dignity of the mortgage itself. The equity of redemption, being a right exclusively within the cognisance of the chancellor, does not come within the operation of any statutory limitation. But policy and justice require that all equitable claims should be asserted in a reasonable and convenient time. Twenty years have been designated by chancery practice, as the proper time within which rights purely equitable should be asserted, and beyond which the chancellor should not, generally, hear an application for relief. In Hovenden vs. Lord Annesley, 2 Sch. and Lef. 637, Lord Redesdale said, that, every new right of action in equity, that accrues to the party, must be acted upon, at the utmost, within twenty years.'” This must be understood with the implied qualification that there has been no intermediate disability, or recognition.
A mortgagor, or mortgagee, in possession' under the mortgage, holds as mortgagor, or mortgagee, and not adversely the one to the other. As long as he so holds, the statute of limitations does not, even as to the legal right, commence running ; and it wuL not com-menee at law until the amicable possession shall have become adverse. But, if either the mortgagor, or mortgagee, he permitted to remain in possession for twenty ... years, without any recognition, express or implied, of the existence of the debt, there should, afterwards, be no eviction, foreclosure, or redemption, against the will of the party so continuing in possession. The law will not presume that such a possession, thus long continued, had ; ... . ' , . . been amicable; but will consider it, alter the end of twenty years, to have been adverse from the beginning, J J ’ a 01 *298 or from the time when the mortgage debt was due, un» less some opposing facts satisfactorily appear. The payment of the debt will be presumed ; and nothing appearing to the contrary, the presumption will be, that it was paid when it became due, and that, of course, the posses-siort, from that time, was adverse, and not in the character of mortgagor, or mortgagee. Hence, if the mortgagee bring -an ejectment against the mortgagor after such unqualified possession for twenty years, the statute of limitations may bar the action ; and, if he filed his bill to foreclose, he may be barred, not only in analogy to the statute of limitations, but because his claim has become too stale and'questionable to justify an enforcement of it in equity. The same principles apply to the mortgagor’s equity of redemption, after a continued possession by the mortgagee for twenty years. But if, within the twenty years, there shall have been any acknowledgment of the subsistence of the debt, or of a holding under the mortgage, the lapse of time may not operate' as a bar, at law, or in equity.
The right of the moitgagov, oi-mortgagee, of a slave, will not be barred by the lapse of time, short of twenty-years, unless it is clearly shewn {infra 301) that the holding of the party in possession had become adverse as to the other party: when the character of the possesseion is thus changed, the statute begins to run, and bars the right in five years.
If a slave be mortgaged, less than twenty years will not bar the equity of the mortgagor, or the right of the mortgagee, unless the party in possession shall, have shewn clearly, that he had disclaimed holding under the mortgage, and had held independently of it, and adversely to the right of the other party to it. In less than twenty years, neither law, nor equity, will presume a transmutation of the possession from its orginal and amicable, into an inconsistent and hostile, nature. The right to redeem a mortgaged slave is precisely the same as the equity of redemption in land. It is the creature of equity, and is nothing but an equity; and, therefore, the statute of limitations does not apply to it ; but the right to redeem may continue for twenty years, to exist; and indeed, facts may have intervened, which may extend it beyond twenty years, just as if the thing mortgaged had been land. But as soon as the mortgagee shall renounce his mortgage, and assert an absolute and indefeasible right to the slave, independently of the mortgage, the relation of mortgagor and mortgagee will cease to exist, and the statute-of limitations will, of course, eo inshmti, commence *299 running : and consequently, such an advei’sary holding, for five years, would bar a legal remedy for restitution, and should equally bar the equity of redemption ; for, in such a case, the equitable right would correspond with a legal right, and the five years adversary possession would have vested the title absolutely in the holder. It was said by Lord Redesdale’s successor, when speaking, on the effect of the legal limitation applicable in such a-case in equity, that “ the court of chancery, for the peace of families and to quiet titles, was bound to adopt it in cases where the equitable and legal title so far corresponded, that the only difference between them was., that the one must be enforced in a court of equity and the other in a court of law." Now, when the mortgagee is in possession, as mortgagee merely, his possession is not adverse, and, within twenty years,will not be so deemed from the simple lapse of time ; and therefore, were the right of the mortgagor as legal as it is equitable, the statute of limitations would not bar his legal remedy. But, as the mortgage will be disconnected from the possession the instant the latter becomes adverse to the right of the mortgagor, and as the mortgage cannot, afterwards, have any influence on the character, or effect of the possession, the statute of limitations will commence running from the moment when the attitude of the parties was changed ; and, as five years adverse possession of a slave may vest the title absolutely in the possessor, the mortgagor cannot redeem after an adverse possession of five years ; because such a possession will have destroyed all liis right, equitable as well as legal. But as long as the possessor holds as mortgagee, the mortgagor may redeem, because there had been no adverse possession. And, as already suggested, the possession of a mortgagee will not be deemed to have been hostile to the right of the mortgagor until it shall have continued so long that the payment of the debt, and a consequent waiver or release of the equity of redemption, may be presumed, or until the chancellor must say, according to the general rule of equity, that the application for relief is too late; and the claim loo stale. In the great case of Clinton vs. Cholmondeley, reported in 2 Merivale, a mortgagor was *300 . permitted to redeem after the mortgagee had been in possession more than twenty years, because the subsistence of the mortgage had been recognised within that time; and the master of the Rolls said that the “possession of twenty years ivas not in the character oj the owner of the legal estate, nor under any claim of being so entitled.” As said in Kane vs. Bloodgood, 7 John. Chy. Rep. '' mere possession is not, even at law, sufficient to bar the claim of the true owner. There must be something tantamount to a disseizin.” This is true, with the implied qualification, that the possession has not been continued for twenty years, and under such circumstances as will create a presumption that it has been adverse during the twenty years, or as-will bar relief in a court of equity ; and that is the only qualification. I have seen no case, I have heard of none, in which a distinction has been taken between the right to redeem a slave, and that of redeeming land ; and I can-perceive no reason for any distinction, unless the possession has been strictly and clearly adverse; and then the statute of limitations applies.
Facts conduce ing to prove that the holding of the mortgagee,in this case, was not adverse
Fenwick, the mortgagor, retained the continued possession of two of the three mortgaged slaves, until within less than five years before the institution of this suit to redeem ; and Macey, though in the possession of the, female slave ever since 1800, frequently said, between that time and 1816, “that' Mr. Fenwick always should have the right to redeem his negroes, and that, although he had taken the girl away, she should come back at any time in the world.” He said, before he took possession of the girl, that “ as long as Fenwick would pay the sum of two hundred and fifty dollars a year, he never would take possession” of the slaves. In 1816, Macey and Fen-wick “disputed” about their accounts — Fenwick insisting that Macey was largely indebted to him, and demanding a settlement, and Macey contending that Fen-wick still was considerably in arrear with him, and “evading” 'a settlement; and one witness proves, that “ this disputing continued’1'’ until 1819. Another witness proves, that, in 1818, Fenwick demanded a settlement, and proposed that General Hardin (Macey’s own lawyer) should *301 make the settlement; and Macey said that Major Brock might make the settlement.
The acts of a mortgagor, or mortgagee, in possession, to have the effect ofeonvertingthe amicable, into an adverse, independent holding, should be direct, unequivocal and overt.
Where the debt is, in fact, wholly paid, if the mortgagee still claim a balance, he should be deemed still to hold as mortgagee.
Other facts,indicating the character of the mortgagee’s pos session, in this case.
'These facts shew satisfactorily, that Macey had made no settlement with Fenwick ; and should be deemed to have held the female slave asíate as the year 1819, not in his own right, but as mortgagee. He had never renounced the mortgage, or mortgage debt, or asserted an absolute and indefeasible title to any of the slaves. Perhaps as early as sometime in 1817, Fenwick, had there been a fair settlement, might have been found not indebted to Macey. But Macey did not admit that his debt was paid, and evaded a settlement. 1 cannot infer, that Macey had admitted, or understood, that the mortgage had been discharged, nor that he did any thing which proved that he had renounced the original contract, or held the slaves adversely, to Fenwick, or independently of the mortgage. There was certainly nothing tantamount to a disseizin.” After holding as a mortgaged,- strong and clear proof of a “ disseizin,” should be required. It will not be presumed ; nor should it be inferred, without some direct, unequivocal, overt act, inconsistent with the original, and long continued, and often admitted, possession as mortgagee.
The contract was indisputably a mortgage ; and Ma-cey’s conduct and declarations, for years, prove undeniably, that he so considered it, or ought to have so considered it. He did not say, that Fenwick might, ex gratia, redeem ; but he frequently said he should continue to have the “ right” to-redeem — thus recognising the subsistence of a mortgage and of a resulting equity of redemption.
The fact that the debt had been actually paid more than five years before the institution of the suit, did-not convert Macev’s possession from amicable to hostile ; and should not be so construed, unless he had known and admitted, that the whole debt had been extinguished; and it is evident that he had never so admitted.
I think that the right to redeem, the woman and her children, is as clear as is the just claim to redeem, the two men slaves, ff Macey claimed any of them as his own absolute property, he claimed them all in the same way. Fenwick paid hire for the- men annually ; his *302 possession was admitted to be Maeey’s possession ; Ma-cey repeatedly said, that he would take all the slaves from Fenwick whenever he should cease to pay punctually the two hundred dollars annual hire. It is evident, that the hire was regularly paid, and that Macey and Fenwick both understood, that, as long as it continued to be thus paid, the right of redemption should continue, as to all the slaves. There is no ground for discrimination. There is no evidenee, that Macey ever bought the woman, or claimed her otherwise than as he claimed the men. Even the answer itself makes no such pretence ; but treats all the slaves as standing precisely on the same., ground.
If the redemption should now operate inconveniently to Macey’s representatives, it will only afford to Fenwick some retribution, though late and incomplete, for the dedication of his estate and his service to Macey, during many years, for the loan of about nineteen hundred dollars. He did not sue for a redemption sooner, because he was lulled by Macey. If Macey had desired to secure himself from loss, or hazard resulting •from time, he ought to have filed his bill for foreclosure; and he ought to have acceded to Fenwick’s overtures for a settlement, and not have evaded them, as he did. It is not too late to do justice; and no principle of equity or authority of law will be violated, or disregarded, by the decree now to be rendered.
Concurring with my associates in much of the view taken by each upon the effect of time, but with neither of them in all their illustrations, I have very hastily and imperfectly presented the principles of my own opinion.