## Sutor *vs* Miles.

### ERROR TO THE FRANKLIN CIRCUIT.

*Lis pendens purchaser.    Limitation.    Estoppel.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

COVENANT.

*Case 149.*

*Nov.* 1, 1841.

The case stated.

In 1836, *Sutor's administratrix* sued *Charles Miles* for damages for an alledged breach of his covenant warranting the title to a slave, *Ambrose,* sold by him to the intestate in *October,* 1822, and which slave was one of those embraced in the suit in Chancery by *Wm. Fenwick* vs *Alex. Macey* and *L. B. Fenwick,* instituted in *June,* 1822, and finally decided in the complainant's favor in 1835, as fully explained in the reported cases of *Fenwick* vs *Macey et al.* (1 *Dana,* 276;) *Fenwick's administrator* vs *L. W. Macey,* (9 *Ib.* 198;) and *the same* vs *the same,* (2 *Ben. Monroe,* 469.)

The ground of the action was the decree in the case of *Fenwick* vs *Macey et al.,* establishing the right of *William Fenwick,* dec'd. to the said slave, Ambrose.

The administratrix having obtained a verdict for $1975, a new trial was granted to Miles, to which she excepted— and on the next trial, verdict and judgment were rendered in bar of her action.

Judgments on the first and second trials.

The first question for revision is, whether the Circuit Judge erred in setting aside the first verdict. And it

SUTOR
*vs*
MILES.

seems to us that he did not err in granting to *Miles* a new trial.

On the first trial *Wm. Fenwick's* title to *Ambrose* was indisputably established, and there was not even the semblance of proof that *Miles* ever had any title. He proved only that, in *December*, 1821, he bought *Ambrose* under a *fi. fa.* against *Lewis B. Fenwick*, but he did not attempt to prove that *Lewis* had any title.

But the proof was uncontradicted and conclusive that *Wm. Fenwick* was in the adverse possession of *Ambrose* when sold under the *fi. fa.* and was actually in possession when *Miles* took him away and sold him to *Sutor*, in October, 1822, during the pendency of the suit of *Fenwick* vs *Macey et al.* And it also appeared that *Sutor* had retained the possession, as in his own right, from the date of his purchase, for more than ten years.

One who takes the possession of property tortiously, which is in contest, from the party who proves successful in the controversy, is not estopped to show his right to the property thus taken, by any decision in the suit.

Now, if it be admitted that *Miles* failed, on the first trial, to show that he had acquired any title to *Ambrose*, and that he was guilty, therefore, of a sheer trespass in taking him from *Wm. Fenwick, pendente lite*, still, as the said William was the complainant in that pending suit, and, according to all the evidence on the first trial, *Lewis B. Fenwick*, who was a defendant, had no possession, the final decree did not conclude or affect *Miles*. For surely the doctrine of *lis pendens* cannot be extended so far as to embrace a stranger who had tortiously intruded on *the successful party* during the pendency of the suit, and deprived him of the possession of property, for establishing his title to which, against the parties to the suit, it was prosecuted by him without making that trespasser upon him a party. In such a case the cause of action which accrued at the date of the eviction was not suspended by the *lis pendens*; and, therefore, *Sutor* acquired the legal right of property by his adversary possession of *Ambrose* for more than five years without disturbance or question. And, of course, his administratrix was entitled to recover on the first trial, no more than nominal damages, on the ground that his vendor had no title. The verdict, therefore, according to any allowable deduction from the proof on the first trial, exceeded the legal measure of damages to which the plaintiff in the action

was entitled, and consequently was, on that ground alone, rightly set aside.

On the last trial *Lewis B. Fenwick*, who was examined as a witness for *Miles*, without objection, testified that he, and not *Wm. Fenwick* his father, was the owner of *Ambrose* when he was sold under the execution against himself, and bought as his slave by *Miles;* that *Miles* paid to the sheriff $650 in notes of the Bank of the Commonwealth, which was the amount bid by him at the sale under the execution, and forthwith received from that officer a bill of sale for *Ambrose*, but did not then disturb the possession of *Wm. Fenwick*, who was holding under his (*Lewis'*) title, and consented to the sale under execution; and that *Miles*, shortly afterwards, agreed that the witness might, within a prescribed time, "redeem" *Ambrose*, but that he was not able to do so, and, therefore, *Miles* made the subsequent sale to *Sutor*, and took *Ambrose out of the possession of Wm. Fenwick*, without objection, so far as the witness knew or had ever heard.

There was no opposing testimony.

Upon these facts it seems to us that the jury was authorized to conclude that *Miles* had a good title when he sold *Ambrose* to *Sutor*, and that, therefore, there had been no breach of his warranty.

If, as the jury had a right to infer, *Lewis B. Fenwick* owned *Ambrose* at the date of the sale under execution, and *Miles* purchased his title absolutely, before the commencement of *Wm. Fenwick's* suit against *Macey* and the said *Lewis*, then *Miles* was not a *pendente lite* purchaser, and his title was not concluded by the decree rendered in the case of *Wm. Fenwick* vs *Macey et al.* as has been already adjudged on the like facts in the case of *Fenwick's administrator* vs *L. W. Macey*, recently decided by this Court and already referred to in this opinion.

We cannot, therefore, set aside the last verdict for want of either evidence or law to sustain it. And, if we are right in the foregoing view of the case, it is evident that nothing occurred in the giving or refusing of instructions, which can be deemed essentially or injuriously erroneous.

SUTOR
*vs*
MILES.

In such case the cause of action was not suspended by the *lis pendens*, and property thus taken, after 5 years adverse holding, cannot be recovered.

A purchaser from one of two persons who afterwards have a controversy involving the title to the property purchased, is not concluded by any decision between such persons.

SUTOR
*vs*
MILES.

It is, therefore, considered that the judgment now sought to be reversed be affirmed.

*S. Todd and H. Marshall* for plaintiff; *Pirtle and Wheatley* for defendant.

## PETITION FOR A RE-HEARING,

*Dec. 25, 1841.*                    By Samuel Todd.

I need make no prefatory remarks. I will, briefly as I can, state the principle set out in this opinion, and state my humble notions of the law.

The first part of the opinion states, (*interatia*,) "that "if it be admitted, that Miles failed, on the first trial, to "show he had any title, he was guilty of a sheer trespass "in taking Ambrose from Wm. Fenwick *pendente lite*, "still as the said William was the complainant in that "pending suit, and L. B. Fenwick had no possession, the "final decree did not conclude or affect Miles;" and you say further, "that surely the doctrine of *lis pendens* can- "not be extended so far as to embrace a stranger who "has tortiously intruded on the successful party during the "pendency of the suit, &c. and that Wm. Fenwick was "bound to make Miles a party," &c. &c.

If I understand the doctrine here laid down, it is plainly this, that if a person is in possession of property, and he brings his suit to quiet the title, and in his bill sets out specifically the property, describes what it is, and where it is, and points out the adverse claim, who pretends to have title to it, and contests its validity, then you say, this suit is no *lis pendens*, but that a stranger may take the property from, and out of the suit, and that the appeal of the complainant to a sovereign Court of Justice for protection is all nought; and why? Not because he has no right; not because a sovereign Court to whom he had appealed was deficient in power to protect his property and quiet his possession. Oh no! His right is clear; but the reason now assigned is, (I tremble to write it,) that because a guilty trespasser has violated and trampled under foot the laws of his country, and contemptuously scorns the authority of the Court, and for

this outrage he is to be secured in his rapacity, and to receive that degree of favor which is to make his case an exception to a rule, which has been denied to a *bona fide* purchaser for full value, and without actual notice.

The case of *Garth* vs *Ward*, seems to me a direct authority to the contrary. There the complainant had the possession, the suit was to perpetuate testimony. There Lord Hardwick declares such a suit, to all intents and purposes, a *lis pendens*, otherwise there would be no remedy for proving a will. He declares it a rule reciprocal for both parties, and he gave the defendant in that case the benefit of it: see 2 *Atkins*, 174.

This Court says, in 9 *Dana*, 377, the proceedings in Tennessee "was a judicial proceeding which was prosecuted with due diligence to a decree, by the well established principles of the common law, had in that State validity and effect, and conclusive operation, not only upon parties and privies, but also upon *pendente lite* purchasers;" if so, the Court having jurisdiction of the cause, and the process served personally on the defendant, and the subject matter of controversy being within the jurisdiction of the Court, a decree thus obtained must have the same force and effect and conclusive operation in Kentucky, upon the same rights and same class of individuals. To give it a conclusive effect upon parties and privies, and not on *pendente lite* purchasers, would no more be giving to it the same conclusive validity and effect in this State, that it has in Tennessee, than if its validity and effect were allowed to operate upon parties only and not upon privies. Comity between States, the letter of the constitution and act, as well as the policy and spirit which dictated their adoption, requires that the same conclusive credit and effect should be given to it in each of the States, upon the rights of all persons and all matters involved in litigation."

Now it does seem plain to me, that all that the law would allow to Miles would be that the statute of limitations would only shield him from such vindictive damages, for this sheer trespass. If an action of trespass was now brought against him for that claim, Fenwick is barred, but does it follow that because he failed to sue

for a trespass for a cause of action accruing after the bill filed, therefore, Fenwick is to loose his rights, as asserted and diligently prosecuted by his previous suit in Chancery. How or upon what fair principle can it be pretended that he, Fenwick, has forfeited his rights to have his decree carried out. What fault is there in him, to impose a forfeiture of the loss of his property, fairly established by his decree, or what merit has Miles, as an intruder? Can he take advantage of his own wrong? All the cases lay down the law clearly and emphatically, that such an intruder need not be noticed by the complainant. Fenwick was in and had the right to the protection of the Chancellor, and he certainly ought not to be refused that protection. His previous rights, as set forth by his bill, to the specific slave, is now to be forfeited because he did not bring a suit for a trespass against Miles, which was done and committed *pendente lite*. Is it not enough that he, Fenwick, is to loose and submit to the special damage which he might have recovered for that trespass? Must he also loose his negro, for which he had previously brought his suit, and by law, was entitled to the protection of a sovereign Court of Justice? Was Fenwick bound to stop and make Miles a party? How could he make him a party, for the very day he took the negro he sold and delivered him to Sutor. Suppose the case had come up to this Court from the Circuit Court, and the taking, like L. W. Macey, had been done whilst the cause was here, on writ of error, how would Fenwick have made Miles a party then—would the law alter as the cause progressed?

It seems to me that the true and clear interpretation of the maxim, *pendente lite nihil innovatur*, is this, that no innovation or change of either the title to the property or the change of the possession of the property, the subject matter in litigation, will be allowed to affect the rights properly decreed in that suit. All the authorities unanimously state the object and reason for which the rule was made, was to prevent the judgment or decree from being defeated. This Court (2 *Dana*, 408,) repeats the rule and says, "the rule as to the effect of *lis pendens*, is founded "on the necessity of such rule to give effect to the pro-

"ceedings of a Court of Justice. Without it every judg-"ment and decree for specific property, might be render-"ed abortive," &c. &c. And the case of *Garth* vs *Ward*, (2 *Atkins*, 174,) clearly proves that it is wholly immaterial whether the possession was with the complainant or defendant, if it was in the suit and under the control and jurisdiction of the Court, so as to be affected and settled by the decree. It certainly was the subject matter in litigation, and this decree, this very decree declared Fenwick's title good and valid to this negro, and set aside and annulled the title of L. B. Fenwick, under whom Miles claimed, when he intruded himself and took the possession of the property. Will this decree now be defeated by the tortious act of Miles? Can he, by that act, *lis pendens*, violate all law, and now claim the sanction of that violated law, to sanction his tortious intrusion? Now let me ask this plain question, if the negro had been let alone by Miles, would the decree have been defeated? You admit, on the first trial, Miles failed to show any title whatever, but you say that as the said William was the complainant in that pending suit, and according to all the evidence on the first trial, L. B. Fenwick, a defendant, had no possession. Now I do think you are mistaken as to this fact. Charles Miles, when the cause was called for trial, filed his affidavit for the purpose of obtaining a continuance; the plaintiff, rather than the cause should be continued, admitted the affidavit of Miles to go as evidence to the jury, and the bill of exceptions shows that affidavit of Miles was in evidence before the jury. Now this affidavit of Miles, which was admitted as evidence, and was given as such to the jury, positively states that Miles delivered the possession to Lewis B. Fenwick: (see page record, 28.) I will here transcribe his very words, viz: "that this affiant, to accommodate said Lewis, and "his father's family, left the negroes in the possession of "said Lewis, at his father's, without charge for hire, until "he was about to go for goods, when he apprised said "Lewis that he must then have the money or the ne-"groes," &c. &c. Now the fact was, that the whole of this negotiation between Miles and Lewis, who lived in the family, was kept a profound secret from Mrs. Todd.

She supposed the negroes were in the possession, as they were in the employment of her father. Miles states positively he delivered possession to Lewis. He states that he went to Lewis to get them or the money; and it does seem to me, that this evidence fully authorizes the jury to infer the fact, that Miles did get the negro from Lewis. Most clearly the jury were authorized so to find; and as the verdict is in accordance to such finding, it is right and ought to be sustained; and surely Miles comes with a very bad grace now to deny what he swore to as the fact.

The case of *Alexander, &c.* vs *Pendleton,* (8 *Cranch,* 462,) was a suit commenced by Pendleton in the Circuit Court; he, Pendleton, being in the possession, and claiming to have been in the possession, by himself and those under whom he claimed, from the year 1732, the suit was to quiet his title. C. Alexander, in the year 1796, instituted suit for the land, and pending that suit, Pendleton purchased. But as Alexander's suit abated and never was revived, it was no *lis pendens* without it had been prosecuted to a decree. But the converse of the proposition is clearly laid down by the Chief Justice, viz: that if that suit had been revived and prosecuted to a decree, Pendleton was clearly a *pendente lite* purchaser, and the statute of limitations would not have run after Alexander's suit was commenced, if he had prosecuted it to a decree.

The case of *Kinsman* vs *Kinsman,* (5th vol. *Con. Eng. Chy. Rep.* 450,) shows how far the doctrine of *lis pendens* has been extended. There a creditor of a testator obtained a decree against two devisees, of two estates, directing that each pay their proportion of the testator's debt. It turned out that no title could be made, to the manor of Northcombe, and the whole debt was made out of the Lamerton estate. The devisee of this estate having paid the whole debt, his right as a defendant against his co-defendants, was in that suit, declared a *lis pendens,* and J. J. Fortesque, 26 years after the complainant's decree was satisfied, purchased the Northcombe estate; yet he was declared a *pendente lite* purchaser. (See the case.) Now I candidly confess, that I do not

cite this case with approbation, and yet it would be considered presumption in me to dispute such high authority; but I cite it to show the extent to which the doctrine has been carried. Now if, in the progress of a suit, wherein the complainant actually is satisfied his claim, and the specific objects of the bill are at an end, no person could possibly suppose they would be in any danger of an equity arising between the defendants, which would ever arise in the cause and be the subject of a further decree.

Now how different is the case of Fenwick. He filed his bill; he set out his right; he prayed that a certain claim, which he set out, was nought, and asked the Chancellor to interpose and quiet his title. The Chancellor does so. They decree his title good; they annul and declare the title of L. B. Fenwick and A. Macey void, and now Miles, who had full notice of the statements and defects of this title, fairly described in the bill, steps forward, claiming under that very title, and in contempt of the authority of the Court, after full jurisdiction was taken, and in violation of law, determines to be his own judge, risque all the consequences; and now, because he has violated the law, trampled under foot the authority of the Court, and committed a sheer trespass, therefore, the Chancellor will tell him, for this meritorious act, you have, by law, a right to defeat Fenwick's decree, and take from him his property and defeat his suit, which was rightfully brought, and prosecuted to a final decree. In vain, indeed, is power given to Courts to make a decree, if that decree is not to have any effect. Imbecile are their powers, indeed, if they cannot give them effect. A re-hearing is respectfully prayed for.      SAM. TODD.

### RESPONSE,

By Chief Justice Robertson.

June 4, 1842.

What has already been said in the opinion in this case and in that of *Fenwick's administrator* vs *L. W. Macey*, renders unnecessary any superaddition on the question of *lis pendens*.

We will, therefore, only suggest, that *Mrs. Todd's* testimony was conclusive as to the fact of the actual possession of *William Fenwick*, her father, and with whom she lived when Miles bought, and also when he took and sold Ambrose.

But even if *Lewis Fenwick* had been in the possession, constructively or otherwise, *Miles'* purchase of *his* title having been prior to the commencement of *Wm. Fenwick's* suit against *Lewis Fenwick* and *Macey*, it was not a purchase, *pendente lite;* and his taking possession of the slave during the subsequent *lis pendens*, should not have been adjudged sufficient for concluding his claim of title.

We are still of the opinion, therefore, that there was no error in setting aside the first verdict. And the petition does not complain that the last verdict in Miles' favor was not right.

Petition overruled.