Borst v. Boyd.

---

### BORST *v.* BOYD and others.

### COREY and others *v.* BOYD and others.

### COREY and others *v.* INGOLD and others.

AN assignment of a mortgage as security for a debt, by a mortgagee in possession, is evidence that the mortgage is redeemable.

The mortgagor, on a bill to redeem, may rebut the objection of lapse of time, by proof of such an assignment, or of similar acts by the mortgagee, although the mortgagor was not a party to the same.

A mortgagee's possession, within the period of limitation, is not adverse to the title of the mortgagor, so as to defeat a conveyance executed by the latter to a stranger.

While the mortgage is redeemable, the mortgagee's possession is deemed to be in trust for the mortgagor.

Where the mortgagee in possession, has sold and conveyed a portion of the lands, the mortgagor coming to redeem, may affirm the sale, and require the mortgagee to account for the purchase money ; in which event, there will be no account of the rents and profits of such portion, subsequent to the sale.

Pending a suit to redeem from a mortgagee in possession, lands which he claimed absolutely, the mortgagor made an assignment of the subject matter, for the benefit of creditors.—*Held*, 1. That the assignment transferred all the mortgagor's estate and interest. 2. That it was not within the provision of the revised statutes against champerty.

The mortgagor's assignment conveyed all his real estate and things in action, in trust, to sell and dispose of the same, and to apply the proceeds for the benefit of creditors.—*Held*, that the assignees took the estate and property, and not a mere

Borst v. Boyd.

power in trust; and that the words "real estate," were sufficient to pass the equity of redemption.

In this state, the equity of redemption is a *legal estate;* and so continues, notwithstanding the lapse of the day of payment, and although the mortgagee may be in possession; until it is cut off by foreclosure or otherwise.

Where one, *pendente lite,* acquires the interest of a party in the suit, and thereupon files a supplemental bill; he must make all the parties to the original bill, whether complainants or defendants, parties to his supplemental bill.

The assignees of a mortgagor, *pendente lite,* who was prosecuting a suit for redemption, filed a supplemental bill, against the original defendants; and afterwards filed a second supplemental bill against one who, pending the suit, had purchased at a sheriff's sale, the right of the mortgagee in possession, under a judgment recovered by a stranger, prior to the suit.—*Held,* that the right of such purchaser, having originated prior to the original suit, the second supplemental bill was an *original bill in the nature of a supplemental bill,* and was as to him, a new suit. And that the proceedings and testimony in the original suit, and first supplemental suit, (except so much of the same as were introduced into the second supplemental bill,) could not be read against such purchaser.

The mortgagee in possession and his assignee, claiming some rights in the premises, were held to be necessary parties with such purchaser, in the second supplemental bill.

Testimony taken by the complainants in the latter suit, cannot be read against the defendants in the prior suits.

Albany, January 12, 13, 14; April 2, 1846.

THE original bill was filed, in December, 1836, by Martin I. Borst, against Alexander Boyd, William A. Boyd, and David Zeilley, for the redemption of six equal undivided seventh parts of a farm of one hundred and twenty acres, situated on the Schoharie Creek, in the town of Middleburgh, in the county of Schoharie, with certain mills and mill privileges thereon.

The premises were mortgaged by John D. Lawyer and wife, to David Lawyer, Junior, on the 29th of April, 1820, to secure $3500, to be paid in three annual instalments, with annual interest, according to J. D. Lawyer's bond of the same date. D. Lawyer, Jr., on the 2d of July, 1821, assigned the bond and mortgage to Alexander Boyd and Henry Hamilton, in trust to pay certain judgments and other debts. Hamilton declined the trust; and on the 5th of October, 1821, D. Lawyer, Jr., made an absolute transfer of the bond and mortgage to A. Boyd. This transfer was recorded in July, 1822.

D. Lawyer, Jr., went into possession of the premises at the

date of the mortgage, and A. Boyd succeeded him in the possession, in May, 1823, and they were held by him and those claiming under him, until the hearing of the cause.

On the 29th of December, 1831, Alexander Boyd conveyed in fee to David Zeilley, a portion of the mortgaged premises, consisting of a carding and fulling mill, and about an acre of land, with the use of water for the mill. Zeilley entered into possession, and has continued there ever since. He paid $2500 for the lands conveyed to him. Previous to this, and on the 3d of May, 1825, Alexander Boyd, by an assignment annexed to the mortgage, transferred the bond and mortgage to John Ingold, William Boyd and Robert Shepherd, to secure the payment of certain debts and liabilities, in the assignment mentioned. On the 7th of August, 1827, W. Boyd and Shepherd agreed with William A. Boyd, a son of Alexander, that on his paying the debt secured to them, they would assign to W. A. Boyd, their interest in the bond and mortgage ; and accordingly, on the 30th day of October, 1830, by an instrument reciting that W. A. Boyd had paid or secured their debt, and that Alexander Boyd consented thereto, W. Boyd and Shepherd assigned the bond and mortgage to William A. Boyd. Ingold's claim to the same, was satisfied before August, 1827.

On the 29th of January, 1836, John D. Lawyer and wife conveyed the equity of redemption, and all their right and title in and to the mortgaged premises, to the complainant, Martin I. Borst.

The original bill prayed an account and redemption. To this bill, Alexander Boyd put in a plea, setting up that at the time of the conveyance to M. I. Borst, the premises were in the actual possession of David Zeilley, and of Alexander Boyd by his tenants, William Warner and William A. Boyd, claiming the same by a title adverse to the title of John D. Lawyer. A replication to this plea, was filed by the complainant.

W. A. Boyd answered, setting forth that the title was originally vested in J. D. Lawyer by a fraud against the creditors of D. Lawyer, Jr. He also set up, (and proof was made to the same effect,) that after the date of the mortgage, in 1820 and 1821, judgments were recovered against D. Lawyer, Jr., while he

was in possession of the premises, and the same were sold on executions upon such judgments, and the certificates of sale in one instance assigned to Alexander Boyd, and in another he received a deed from the party to whom the sheriff executed a conveyance on the sale. W. A. Boyd alleged, that on Ingold's interest in the assignment to him with W. Boyd and Shepherd being extinguished, Alexander Boyd, in 1827, agreed with him, that if he would pay the debt to W. Boyd and Shepherd, the bond and mortgage should be his, and all the mortgaged premises, except those afterwards conveyed to Zeilley, and the grist mill and dwelling adjacent, with one acre of land and the appurtenances. And that he accordingly made all the payments to W. Boyd and Shepherd. The answer then set forth substantial and permanent improvements made on the premises by Alexander Boyd, W. A. Boyd and Zeilley, to the amount of about eight thousand dollars. That when W. A. Boyd paid W. Boyd and Shepherd, A. Boyd claimed the premises in fee, and W. A. B. believed he had a perfect title thereto. He entered into and has since held possession under that belief, of the part agreed to be his, claiming it as his own. He insisted that the deed from J. D. Lawyer to M. I. Borst was void, by reason of the adverse possession, and also by force of the sixth section of title sixth of chapter first of the fourth part of the revised statutes. A replication was filed to this answer.

David Zeilley also answered, and an issue was joined as to him, but the complainant having assented to permit his title to stand good, it is unnecessary to state his answer.

Proofs to some extent, were taken in the original suit; when on the 27th of September, 1839, the complainant, Martin I. Borst, by a deed of assignment, granted, sold and assigned all his real estate, personal property, and choses in action, to David P. Corey, Samuel Newkirk, and Joseph I. Borst, in trust to sell and dispose of the same, and apply the proceeds in payment of his debts, and to pay the surplus, if any, to the assignor.

On the 28th of November, 1840, these assignees filed a supplemental bill against Alexander and William A. Boyd and Zeilley, to have the benefit of the original suit. Martin I. Borst was not made a party to this bill.

Borst v. Boyd.

The defendants, A. and W. A. Boyd, put in answers, insisting that the assignment to Corey and others was void as to these premises, by reason of adverse possession, and that it gave the assignees no authority to file a bill, or maintain any action in regard to the premises. Zeilley suffered the supplemental bill to be taken as confessed. Upon the issues on the Boyd's answers, testimony was taken at large.

In May, 1843, the assignees, Corey and others, filed a second supplemental bill against John Ingold, Samuel Lyon, Harman Becker, Jeremiah L. Becker, and Joseph Bouck, to have the benefit of the two prior suits; under which bill the following facts appeared.

On the 23d day of August, 1839, Alexander Boyd conveyed in fee to Lyon twenty acres, to H. Becker six acres, to J. L. Becker fourteen acres, and to W. A. Boyd twenty acres, parcels of the mortgaged premises; at the same time executing to them a covenant to refund, in case Borst's suit was decided against him, out of the first moneys received on Borst's redemption, and assigning to them the D. Lawyer, Jr. bond and mortgage to that extent.

About the same time, A. Boyd conveyed forty-two acres in like manner to Joseph Bouck; being one of the parcels bought by Ingold, as next mentioned.

The interest of Ingold arose under a judgment in the supreme court, recovered and docketed by the Mohawk Bank, on the 31st day of March, 1836, against Alexander Boyd, David Boyd, and Ingold, in which the latter was a surety for A. B.; by virtue of an execution on which judgment, Ingold on the first of July, 1842, became the purchaser at a sheriff's sale, of the grist mill premises, and a parcel of forty-two acres, both being parts of the mortgaged premises. The sheriff conveyed to Ingold, in October, 1843, pursuant to this sale.

The answer of Ingold set up these facts, and the other defences before stated. He insisted that the Mohawk Bank ought to have been parties to the original bill, and for that cause his rights were not affected by any of the proceedings in the original or first supplemental suits. The other defendants to the second

supplemental bill, suffered it to be taken as confessed. None of the parties to the first bill, were made parties in the second supplemental bill.

Issue was joined on Ingold's answer, and some documentary evidence taken thereon. It appeared that a notice of the pendency of a suit, entitled with the names of M. I. Borst and his three assignees, as complainants, was filed, May 14th, 1842, in the Schoharie clerk's office, which stated the objects of the original and first supplemental suits.

*A. C. Paige,* for the complainants.

*D. Cady,* for the defendants, A. Boyd, W. A. Boyd, and J. Ingold.

THE ASSISTANT VICE-CHANCELLOR.—When the original bill was filed, the lands in question which were not claimed by Zeilley, were possessed by or under Alexander Boyd ; and William A. Boyd claimed that he had a right therein, not only as a tenant, but as a purchaser, in consequence of his paying Boyd and Shepherd the debt for which John D. Lawyer's mortgage had been assigned to them.

The interest of William A. Boyd has not been divested, and my first inquiry will be directed to Martin I. Borst's right to redeem, as against the two Boyds.

There is no doubt but that David Lawyer, Jr., entered into the possession of the lands, as mortgagee. He had no other interest or pretence of right at that time. Alexander Boyd succeeded him in that possession, and with no other or better claim to the lands than D. Lawyer, Jr., had when he entered. The conveyances to A. Boyd subsequently, under the sheriff's sales against the mortgagee, D. Lawyer, Jr., gave Boyd no better or larger estate than the absolute assignment of the mortgage conferred on him.

There is no validity in the objection, that the remedy of Borst was barred by lapse of time.

The mortgagee's possession commenced in or about May, 1820. On the 3d of May, 1825, A. Boyd assigned the mortgage

under which he held the possession, to Messrs. Ingold, Boyd, and Shepherd; and on the 23d of October, 1830, the mortgage was re-assigned to W. A. Boyd, with Alexander Boyd's assent. These transactions are decisive that the mortgage was redeemable as late as October, 1830; and although the mortgagor was not a party to them, he may avail himself of the evidence which they afford of the nature of the mortgagee's interest and claim. (*Smart* v. *Hunt*, 4 Ves. 478, note *a* ; *Hardy* v. *Reeves*, 4 ibid. 466, 479 ; and *S. C. nomine, Hansard* v. *Hardy*, 18 ibid. 455, 459.)

The original bill was filed in December, 1836, so that the limitation prescribed by the revised statutes, was no bar, even if that were applicable. In *Williamson* v. *Field*, which was a similar case, (decided July 21, 1845,)(*a*) I held that the revised statutes did not apply.

Another objection to the claim made by the original bill, is that when John D. Lawyer conveyed the equity of redemption to Martin I. Borst, in January, 1836, the lands were held adversely to the grantor.

This position I think cannot be maintained. A mortgagee's possession, at any period within twenty years from his entry, so far from being hostile to that of the mortgagor, is in equity deemed a possession in trust for him. (4 Kent's Com. 167, 2d ed. ; *Cholmondeley* v. *Clinton*, 2 Merivale, 361.) In England, where a mortgage conveys the entire legal estate, the possession of the mortgagor was never deemed adverse, so as to interfere with the mortgagee's conveying or assigning the estate, so long as his remedy on the mortgage was not barred by lapse of time.

At the time of the conveyance from John D. Lawyer to Borst, the former had an undoubted right to redeem. How, then, could Boyd's possession at that time be considered as adverse ? The mortgagee's possession is just as consistent with the mortgagor's title, as is the possession of the latter with the title and interest of the mortgagee. .One as well as the other, may in time ripen into a valid hostile title, but the intermediate possession cannot

(*a*) Since reported, 2 Sand. Ch. R. 533.

be deemed adverse, so far as to defeat or impair transfers of the existing title of the party out of possession. A mortgagee may work a *disseisin*, but I apprehend within the period requisite for barring redemption, that can only be done by some direct, open and unequivocal act, in hostility to the title of the mortgagor.

On this point, I refer to *Anon.* (3 Atkyns, 313 ;) *Hovenden* v. *Lord Annesley*, (2 Sch. & Lef. 637 ;) *Cholmondeley* v. *Clinton*, (2 Mer. 171, 357 to 360 ;) *Fenwick* v. *Macey's Executors*, (1 Dana, 280, 297, 299, 301.)

These views dispose of the defences interposed by the Boyd's. Zeilley makes no objection to a decree which will leave him undisturbed in his grant from Alexander Boyd ; and the complainants assent to affirm the sale to Zeilley, and to hold Boyd responsible for the purchase money. At the date of this conveyance, (January, 1831,) Alexander Boyd was in equity, the principal mortgagee. The re-assignment of the mortgage to W. A. Boyd, gave him no greater interest than to the extent of his advances to Boyd and Shepherd. I therefore think it is competent for the complainants to ratify the sale to Zeilley, in the manner proposed. But in so doing, they can no longer claim an account for the rents and profits of that portion of the lands mortgaged, from and after the conveyance to Zeilley. The purchase money will properly apply as an extinguishment of so much of the mortgage debt, at the date of the deed.

*Second.* The next inquiry relates to the right of the complainants in the first supplemental suit. The question is distinctly presented in reference to the Boyd's, whatever may be the case as to Ingold.

Two objections are made to the title of Martin I. Borst's assignees. In the first place, it is said that the premises were the subject of controversy in this court, at the time of the assignment, and were not in the possession of Borst. Also, that it was void by the provision against buying or selling the titles of persons not in possession of lands. (2 Rev. Stat. 691, §§ 5 and 6.)

What I have already said in respect of J. D. Lawyer's conveyance to Borst, disposes of this objection. And I might add, as to the sixth section of the statute against champerty, that an assignment for the benefit of creditors, can scarcely be deemed a

buying, or selling, or a promise or covenant to convey, within the meaning of the statute.

Next, it is said that the assignees took no estate, but only a power in trust, by the deed to them ; and that the terms of the conveyance were not sufficient to pass the right or interest which Borst had in these premises.

The former position is taken on the clause which reserves the surplus to the assignor, after paying all his debts. Inasmuch as the law would give this to him, without any provision in the assignment, it is manifest that its insertion cannot make the instrument any worse than if it were omitted.

As to the other ground, it is urged for the reason that the assignment describes and conveys "*real estate* and personal property" only ; whereas Borst's right in these premises was a mere equity, growing out of the realty, but having no characteristic of a legal right or title to land. My view of Borst's right is wholly different. It is true it was the *equity of redemption*, but in our law that is a legal estate, until it is barred by foreclosure or otherwise, which may be conveyed as land, and sold on execution, and in which a widow is entitled to dower. Neither the lapse of the day of payment, or the mortgagee's being in possession, affect the nature of the mortgagor's estate. Whether a mortgagee by those events, also has an estate upon which a judgment may become a lien, is a question arising in another part of this case.

I am satisfied therefore that Martin I. Borst's right and title vested in his assignees.

*Third.* I now approach the second supplemental bill, and I meet the questions of form and of parties, which were raised in respect of both of the auxiliary bills.

Where a person having acquired the interest of a party to a suit, which is pending, thinks proper himself to file a supplemental bill ; he must make all the other parties to the original bill, whether complainants or defendants, parties to his supplemental bill. (2 Barbour's Ch. Pr. 69 ; 3 Daniell's Ch. Pr. 165, 180 ; *Binks* v. *Binks*, 2 Bligh, 593 ; *Feary* v. *Stephenson*, 1 Beavan, 42.) Therefore, as Martin I. Borst retained a contingent interest in the property, he was a necessary party in both of the bills

filed by his assignees.    But this objection as to Borst, comes too late from the other parties, at the hearing.

The second bill filed by the assignees, must be regarded as an original bill in the nature of a supplemental bill, as against Ingold, and indeed it was, as to him, a new suit.    His title, although acquired *pendente lite*, came to him from the Mohawk Bank, through their judgment, which if it were a lien at all, was a lien before the original bill was filed, and was unaffected by that· suit.

The Mohawk Bank should have been a party to the original suit, if as Ingold claims, their judgment were a lien.  (Story's· Eq. Pl. 188.)

The defendant Ingold, having succeeded to their title, stands· in the same situation that the bank would have done, if the last bill had been filed against the bank, as still retaining the lien. (3 Daniell's C. Pr. 176.)   This being so, the proceedings and tes-· timony in the original suit, (except so far as they are introduced into the last bill,) do not affect Ingold, and cannot be read against him.  (2 Barb. Ch. Pr. 85 ; 3 Daniell's, 164, 189.)   If Ingold had succeeded to nothing more than the interest which A. Boyd had at the commencement of the suit, a simple supplemental bill would have sufficed, and the defendants in the prior suit would not have been necessary parties.    But as the case stands, I think they should be parties defendant with Ingold.   (See 3 Daniell's, 178, 179 ; 2 Barbour, 86.)

There is the further reason for making them parties in this case, that W. A. Boyd claims an interest in the mortgage, which may conflict with that of Ingold, in decreeing redemption.

The Mohawk Bank appears to be a necessary party, in respect of their judgment, in connection with the agreement on the sale, by A. Boyd to Lyon and others.   The latter was made during the pendency of the suit, but the bank's lien existing before the suit, was the consideration of the provision in their behalf in the agreements.    This of course is on the assumption that there was a lien ; and Ingold's claim under their judgment and sale having driven the complainants to make him a party, the Mohawk Bank is a proper party on the same ground.

I do not determine the point as to the lien of the Mohawk

Borst v. Boyd.

Bank judgment, at this time, because the suit against Ingold, being an original suit, must needs stand over to have the proofs made applicable to both the supplemental and the original suits. Some of the evidence before me applies to the suit against Ingold, but it cannot be read in the suits against the Boyd's, and *vice versa.*

In respect of Lyon and the other purchasers from A. Boyd, in 1839, a supplemental bill against such purchasers only, would have sufficed ; had they not become connected with the Mohawk Bank judgment.

The decree to be entered in this stage of the suits, may declare the right of Martin I. Borst's assignees to redeem the lands in question, as against the Boyd's and the respective purchasers from A. Boyd, limiting it as to Zeilley, as I have heretofore suggested. And it may provide for the assignees amending their second supplemental bill, by bringing in the proper parties, and in such other manner as they may be advised, with leave to Ingold to answer anew : or the assignees may exhibit a new supplemental bill for that purpose. All questions between Ingold and the assignees, will be reserved.

The only objection of a formal nature, which was taken in Ingold's answer, is that the Mohawk Bank should have been a party to the original bill; but as this is well taken, and the difficulties in the way of a final disposition of the subject, have chiefly arisen from that omission; I think the complainants must pay to Ingold, the costs of the hearing, and of his preparation therefor.(a)

---

(a) In July, 1846, J. Ingold signed a consent that the complainants might take a decree for redemption, and for other relief as court might deem equitable, and waived any objection on the ground of the want of proper parties. A decree for redemption was made accordingly.