CHANCERY.

Case 20.

December 27.

Case stated.

Baker's adm'r. *vs.* Baker's adm'r.

ERROR TO MASON CIRCUIT.

Judge SIMPSON delivered the opinion of the court.

1. It is a well settled rule, that when the statute of limitations begins to run in bar of a right to recover personal property, it continues to run notwithstanding the death of the claimant; (1 *Bibb*, 181; 2 *Ib.* 537: 3 *Monroe*, 41;) but if it did not begin to run before the death of the claimant, it would not commence until administration granted.

2. If a suit is commenced before the right of action is barred, and abates by the death of the party, plaintiff or complainant, but is again commenced, or revived within one year, it comes within the equity of the proviso in the statute in regard to specified actions. (1 *Washington*, 302; 8 *Cranch*, 84.)

3. Where a suit in chancery was brought to redeem a slave held by defendant, by absolute bill of sale, upon the alleged ground that it was intended as a mortgage to secure the loan of money, and complainant died, and abatement entered, and about fifteen years elapsed before bill of revivor—held that the complainant was barred by lapse of time.

In the year 1819, Beckwith Baker executed to his brother John Baker a bill of sale for a mulatto boy named John, in which it was stated that the sale had been made in 1817, for the consideration of three hundred and fifty dollars, sixty dollars of which had been paid on the day of the sale, and that the balance had been paid and secured to be paid on the day the writing was executed.

In the year 1825, Beckwith Baker instituted a suit in chancery against John Baker, and alleged in his bill, that although the aforesaid bill of sale was absolute on its face, yet it was intended by the parties to be, and was in reality, a mere mortgage to secure a loan of about one hundred dollars, which had been made to him by his brother, who was claiming the slave as his own, and had refused to permit the complainant to redeem him. He claimed a right to redeem, and prayed for an account to be taken of the hire of the slave, during the time he had been in the defendant's possession.

Baker's adm'r.
vs.
Baker's adm'r.

The defendant, John Baker, answered the bill in 1826. He denied the complainant's right to redeem, and contended that he had purchased the slave absolutely, although he admitted that part of the purchase money remained unpaid. He also denied that the instrument of writing was intended to operate as a mortgage, or that he had loaned any money to the complainant, and claimed the slave as his own property.

The complainant proceeded to take depositions to prove that the sale was made merely for the purpose of securing the payment of money he had borrowed from the defendant. The last deposition taken in the cause bears date in 1828.

In February, 1832, an order was made abating the suit, on account of the death of the complainant.

In March, 1847, the administrator of Beckwith Baker filed a bill of revivor, and John Baker the defendant having died in 1836, the suit was revived against his widow, she having administered on the estate of her deceased husband. No administration was granted on the estate of Beckwith Baker until the year 1846.

The defendant, in her answer to the bill of revivor, alleged that her husband, and his brother Beckwith Baker, had, as she had been informed by her husband, and which she believed to be the fact, compromised and settled the controversy about the slave, in the lifetime of the complainant's intestate. She relied for the establishment of the fact upon the presumption arising from the lapse of time, and the failure of Beckwith Baker to prosecute the suit during the space of several years immediately preceding his death. She also relied upon the statute of limitations, and the staleness of the claim, to defeat the relief sought for by the complainant.

The circuit court, upon the hearing of the cause, dismissed the complainant's bill, and he has prosecued a writ of error to reverse that decree.

The principal question to be considered is, the effect which the lapse of time is to have on the right of redemption attempted to be asserted in the suit; for we entertain no doubt that the bill of sale was executed for the purpose, solely, to secure a loan of money, and that a right of redemption once existed.

It was decided in the case of *Fenwick* v. *Maccy*, 1 *Dana*, 276, that a bill to redeem slaves might be maintained at any time within twenty years, unless the mortgagee had been in the adverse possession of the slaves, claiming them as his own, and openly denying the mortgagor's right of redemption, and then a bill to redeem could not be maintained after the expiration of five years, if the adverse possession had continued during that time.

In this case the vendee, before this suit was instituted, claimed the slave as his own, and denied that his vendor had any right of redemption. This fact is stated by the complainant in his original bill. If this adverse possession had been continued by the vendee for five years before the suit was commenced, the vendor's right of redemption would have been lost; and as this adverse holding began before the suit was brought, and has been continued ever since, the inquiry is, whether, under the circumstances of the case, the right of redemption has been preserved or has been lost by the lapse of time. Whether the rule adopted by the chancellor limiting the time in which the right to redeem will be recognized and enforced, is founded on the statute of limitations or a rule of policy, or on equitable presumptions merely, still, in the application of the rule, the principles that have been settled in relation to the operation of the statute upon legal rights will be regarded.

It is a well settled doctrine, that with respect to claims to personal property, when the statute begins to run, it continues to run, notwithstanding the death of the claimant. (1 *Bibb*, 181; 2 *Bibb*, 537; 3 *Monroe*, 41.) There is no saving in the statute by which the interval that elapses after the death of the claimant,

before administration upon his estate has been granted, is excluded in the computation of the time necessary to complete the bar. When the statute commences running in the lifetime of the claimant, it is not interrupted by his subsequent death, although if the cause of action did not accrue in his lifetime, it would not commence running until administration upon his estate was granted.

Where, however, a suit has been commenced within the time limited, and that time runs out, and the suit abates by the death of the plaintiff, it has been decided, that if a suit be commenced within a year after the abatement, the plaintiff comes within the equity of the proviso in the statute, allowing a year within which a new action may be brought in certain specified cases. (1 *Wash. Rep.* 302; 8 *Cranch*, 84.) And in the case of *Montgomery* v. *Caldwell*, 4 *Bibb*, 306, it was said by the court, that where the plaintiff's action abates in consequence of his death, it might be proper, although the time of limitation may have elapsed, to permit the executor or administrator, under the equity of the statute, to maintain a new suit within the time mentioned in the *proviso.*

When, therefore, the suit in this case was abated by the death of the complainant, the statute having commenced running in his lifetime, would, according to the legal rule, have continued to run after his death, notwithstanding no administration was granted on his estate, although in analogy to the principle adopted at law in similar cases, another bill might have been exhibited within a *reasonable* time, that is within a year, after the abatement of the original suit, even if the time of limitation had expired, and the complainant would have been within the equity of the proviso. But as that was not done, unless the suit can be regarded, when revived by the bill exhibited by the administrator for that purpose, as having been pending from the time the original bill was filed, so as to have suspended the running of the statute during the whole time, the right of redemp-

BAKER'S ADM'R.
*vs.*
BAKER'S ADM'R.

erty, it continues to run notwithstanding the death of the claimant. (1 *Bibb*, 181; 2 *Ib.* 537; 3 *Monroe*, 41;) but if it did not begin to run before the death of the claimant, it would not commence until administration granted.

2. If a suit is commenced before the right of action is barred, and abates by the death of the party, plaintiff or complainant, but is again commenced, or revived within one year, it comes within the equity of the proviso in the statute in regard to specified actions. (1 *Washington*, 302; 8 *Cranch*, 84; 4 *Bibb*, 306.)

BAKER'S ADM'R.
vs.
BAKER'S ADM'R.

3. Where a suit in chancery was brought to redeem a slave held by defendant, by absolute bill of sale, upon the alleged ground that it was intended as a mortgage to secure the loan of money, and complainant died, and abatement entered, and about fifteen years elapsed before bill of revivor—held that the complainant was barred by lapse of time.

tion has been clearly barred, by an adversary posses'- sion of more than twenty years.

After the order of abatement was made, the suit was no longer actually pending, although it should, perhaps, have been regarded as constructively pending for a reasonable period for the purpose of having it revived, inasmuch as the right asserted by the complainant and his cause of action survived to his personal representative. The usual practice where the complainant dies, is not to have an order of abatement entered, but to continue the suit on the docket for the purpose of revivor, and if a bill of revivor be filed within a *reasonable* time, it should in such a case be regarded as a continuation of the former suit. But where, as in the present case, an abatement is entered on the record, and no bill of revivor is exhibited until after a period of fifteen years, the suit cannot be regarded as having been pending in the interval, so as to prevent either the operation of the rule that applies the statute, or to secure the benefit of a *lis pendens*. (*Watson* v. *Wilson*, 2 *Dana*, 407.)

The gross negligence evident in the prosecution of the claim is not excused by the fact that no administrator was appointed until 1846. The failure to have an administrator appointed was, of itself, negligence, as a grant of administration could have been obtained as well fifteen years previously as at the time it was had.

But in addition to the bar created by the statute, there is a violent presumption arising out of the great lapse of time, and the other circumstances attending the transaction, that the controversy was compromised and settled in the lifetime of the original parties. The suit, although prepared for trial, was permitted to slumber on the docket, for four or five years, and when the complainant died, instead of retaining the suit upon the docket in the ordinary way until a bill of revivor was exhibited, an order of abatement was entered, and no effort seems to have been made for its further prosecution, until near thirty

years after the time that the possession of the slave in contest had been first acquired by the purchaser. Under these circumstances the claim cannot be sustained in a court of chancery. Wherefore the decree dismissing the bill is affirmed.

*Waller* and *Harlan*, for plaintiff; *H. Taylor*, for defendant.